**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20−1363

JEAN FRANCOIS PUGIN,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  March 9, 2021                          Decided:  November 30, 2021

Before GREGORY, Chief Judge, AGEE, and RICHARDSON, Circuit Judges.

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Agee joined.  Chief Judge Gregory wrote a dissenting opinion.

**ARGUED:**  Martha Hutton, O'MELVENY & MYERS LLP, Washington, D.C., for Petitioner.  Margot Pyne Kniffin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian D. Doyle, Julio Pereyra, O'MELVENY & MYERS LLP, Washington, D.C., for Petitioner.  Jeffrey Bossert Clark, Acting Assistant Attorney General, Melissa Neiman-Kelting, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

RICHARDSON, Circuit Judge:

Jean Francois Pugin is a lawful permanent resident facing deportation. The government decided to deport Pugin after he was found guilty of being an accessory after the fact under Virginia law. That conviction, the government contends, permits Pugin to be deported under the Immigration and Nationality Act for having committed an "aggravated felony," namely one "relating to . . . the obstruction of justice." 8 U.S.C. § 1101(a)(43)(S). Pugin disagrees, claiming that an accessory-after-the-fact conviction under Virginia law does not categorically qualify under the Act as one "relating to obstruction of justice." We agree with the government that it does.

We first find that the Board of Immigration Appeals' definition of "obstruction of justice" under the Act is due *Chevron* deference. Finding *Chevron* deference must be given, we then find that the Virginia offense of accessory after the fact categorically matches the Board's definition. So we affirm the Board's finding that Pugin may be deported under the Act.

## I.      Background

Jean Francois Pugin, a native and citizen of Mauritius, was admitted to the United States in 1985 as a lawful permanent resident. In 2014, Pugin pleaded guilty in Virginia to being an accessory after the fact to a felony. He was sentenced to twelve months imprisonment with nine months suspended. Pugin was then issued a notice to appear charging him with removability because he was convicted of an aggravated felony: "an offense relating to obstruction of justice, perjury, or subornation of perjury." 8 U.S.C. §§

1101(a)(43)(S), 1227(a)(2)(A)(iii).[1]   Pugin moved to terminate proceedings before the

immigration judge, asserting that he was not removable because his conviction was not an

aggravated felony.

The immigration judge explained that the categorical approach is the proper form

of analysis to determine whether Virginia accessory after the fact qualifies as obstruction

of justice.   Employing that approach, the immigration judge noted that the Board had

previously decided that a federal conviction for accessory after the fact under Section 3 of

Title 18[2] is a crime relating to obstruction of justice.  *See In re Batista-Hernandez*, 21 I. &

N. Dec. 955, 961 (B.I.A. 1997).  Turning to whether Virginia's version of that offense also

qualified, the immigration judge determined first that under *Matter of Espinoza-Gonzalez*,

22 I. & N. Dec. 889, 894–95 (B.I.A. 1999), a state conviction falls under the obstruction-

of-justice designation if it requires a defendant to act with the "purpose of hindering the

process of justice."  A.R. 73–74.  The immigration judge then held that Virginia accessory

after the fact is an offense relating to obstruction of justice because, like its federal

counterpart, the offense requires the defendant "act with the 'specific purpose of hindering

the process of justice.'"  A.R. 74.  Because the elements categorically matched and Pugin

---

[1] Virginia classifies accessory after the fact as a misdemeanor.  Va. Code § 18.2-19. But Pugin does not contest that the "term of imprisonment" for this misdemeanor was "at least one year" as required to qualify as an aggravated felony under federal law.  8 U.S.C. § 1101(a)(43)(S); *see also* §1101(a)(48)(B) ("a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition . . .").

[2] Section 3 does not require an ongoing proceeding.  It criminalizes certain actions done "in order to hinder or prevent" the "apprehension, trial or punishment" of one known to have committed certain offenses.

did not raise a reasonable possibility that Virginia would prosecute someone who lacked specific intent, the immigration judge held that the Virginia law qualified as an aggravated felony. A.R. 73–74. Pugin appealed, and the Board affirmed, largely adopting the immigration judge's analysis and relying on the generic definition of obstruction of justice laid out in *In re Valenzuela Gallardo II*, 27 I. & N. Dec. 449 (B.I.A. 2018). The Board ordered Pugin removed. A.R. 9–11.

Pugin timely appealed, and we have jurisdiction to review the legal decisions of the Board. 8 U.S.C. §§ 1101(a)(47)(B)(i), 1252(a)(2)(D), 1252(b)(1).

## II. Analysis

An alien is removable if he has been convicted of an aggravated felony. 8 U.S.C. § 1227(a)(2)(A)(iii). An aggravated felony includes, among other things, "an offense *relating to obstruction of justice*, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(S) (emphasis added). In *In re Valenzuela Gallardo II*, 27 I. & N. Dec. 449, 460 (B.I.A. 2018), the Board defined "offenses relating to obstruction of justice" as requiring "(1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere either in an investigation or proceeding that is ongoing, pending, or reasonably foreseeable by the defendant, or in another's punishment resulting from a completed proceeding."

Pugin challenges the Board's interpretation of "obstruction of justice" for several reasons all based on his position that obstruction of justice requires an ongoing proceeding. First, he contends that the phrase is a term of art that is not ambiguous and that requires a connection to an ongoing or pending proceeding or investigation. As a result, he argues,

4

*Chevron* does not apply. And he argues that even if the phrase is ambiguous, the Board's interpretation is not reasonable. He also asserts that the rule of lenity should apply rather than *Chevron* because the definition of obstruction of justice is used in criminal actions. For the reasons below, we reject each of these challenges. And finding *Chevron* applies, the phrase ambiguous, and the Board's interpretation reasonable, we then must decide whether Virginia accessory after the fact categorically matches the Board's definition. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Virginia uses the common-law definition of accessory after the fact. *Commonwealth v. Dalton*, 259 Va. 249, 253 (2000). At the very least, the parties agree that this requires: (1) a completed felony; (2) that the person giving aid knows the felon is guilty; and (3) that the accused receives, relieves, comforts, or assists the felon. *Id*. The parties disagree over whether Virginia law requires the accused to act "with the view of enabling his principal to elude punishment," *Wren v. Commonwealth*, 26 Gratt. 952, 67 Va. 952, 957 (Va. 1875), or said another way, to act with specific intent. We find that Virginia case law shows that specific intent is required to obtain an accessory-after-the-fact conviction, creating a categorical match with the Board's definition. As a result, we find Pugin removable and affirm the Board.

**A.      The Board's interpretation is due deference under *Chevron***

We give deference to an agency's reasonable interpretation of an ambiguous statute it administers because of its expertise and because of what is viewed as an implicit congressional delegation of authority to interpret that ambiguity. *Chevron*, 467 U.S. at 865. *Chevron* applies with particular force in the immigration context as "judicial deference to the Executive Branch is especially appropriate . . . where officials 'exercise

5

especially sensitive political functions that implicate questions of foreign relations.'" *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424–25 (1999) (quoting *I.N.S. v. Abudu*, 485 U.S. 94, 110 (1988)).  That is certainly true of the Immigration and Nationality Act, which "provides that '[t]he Attorney General shall be charged with the administration and enforcement' of the statute and that the 'determination and ruling by the Attorney General with respect to all questions of law shall be controlling.'"  *Id*. (quoting 8 U.S.C. § 1103(a)(1)).  So we generally afford deference to an interpretation of that Act by a three-person panel of the Board.  *Nunez-Vasquez v. Barr*, 965 F.3d 272, 279 (4th Cir. 2020).

Pugin argues that *Chevron* cannot apply to the Board's decision in *In re Valenzuela Gallardo II*, 27 I. & N. Dec. 449, 460 (B.I.A. 2018), because the definition of "obstruction of justice" has effect in criminal proceedings.  *See, e.g.*, *Valenzuela Gallardo v. Barr*, 968 F.3d 1053, 1059–62 (9th Cir. 2020) (acknowledging the issue in this context but applying *Chevron* because circuit precedent has given deference in similar situations).  So we begin at "Step Zero" by asking whether *Chevron* applies at all.  *See* Cass R. Sunstein, *Chevron Step Zero*, 92 Va. L. Rev. 187, 209–10 (2006).

### 1.  Step Zero:  *Chevron* applies

There is a thoughtful and ongoing debate about whether *Chevron* can apply to interpretations of criminal law, which implicates serious questions about expertise, delegation, flexibility, notice, due process, separation of powers, and more.[3]  But we need

---

[3] *Compare Gun Owners of America, Inc. v. Garland*, 992 F.3d 446, 461–67 (6th Cir. 2021) (arguing against *Chevron* deference to interpretations of criminal law); Paul J. Larkin, Jr., Chevron *and Federal Criminal Law*, 32 J. L. & POL. 211, 222–28 (2017); (Continued)

not resolve that question here because the Immigration and Nationality Act is a civil statute, and any collateral criminal consequences are too attenuated to change our analysis.

Pugin argues that *Chevron* deference cannot be given to the interpretation of an immigration statute when the interpretation might impact a future criminal prosecution. The Immigration and Nationality Act subjects aliens to removal if they commit certain aggravated felonies, such as obstruction of justice.  8 U.S.C. §§ 1227(a)(2)(A)(iii), 1229b(a)(3).  And if a removed alien later illegally reenters the United States and if that alien is convicted of illegal reentry, then an increased criminal punishment applies.  *Id.* § 1326(b)(2); *see also id*. § 1327.  It is because of this potential, indirect effect of the Act's aggravated-felon provision on a future criminal prosecution that Pugin contends lenity and not *Chevron* must govern.

We disagree.  The Immigration and Nationality Act is a civil statute that expressly delegates rulemaking authority to the agency in a civil proceeding.  And not every interpretation that might impact the scope of criminal liability negates *Chevron*.

The type of statute being interpreted and the order of the proceedings matter.  When an otherwise civil statute is first interpreted when making a determination in a civil

---

*Esquivel-Quintana v. Lynch*, 810 F.3d 1019, 1027 (6th Cir. 2016) (Sutton, J., dissenting in part), *rev'd sub nom. Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017); *Aposhian v. Wilkinson*, No. 19-4036, 2021 WL 833986, at *7–8 (10th Cir. Mar. 5, 2021) (Tymkovich, C.J., dissenting from vacating en banc); *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1155–57 (10th Cir. 2016) (Gorsuch, J., concurring); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 S. Ct. 789, 790 (2020) (Gorsuch, J., respecting the denial of certiorari), *with* Dan M. Kahan, *Is* Chevron *Relevant to Federal Criminal Law?*, 110 HARV. L. REV. 469, 469–70 (1996) (arguing for *Chevron* deference to interpretations of criminal law); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 23–27 (D.C. Cir. 2019).

proceeding, *Chevron* deference can be afforded even though the determination based on that interpretation might indirectly impact future criminal liability. Precedent supports this view. We have consistently held that "we are obliged to apply the principles of *Chevron* to the [Board's]" various definitions of aggravated felony.[4] So our precedent suggests that we must apply *Chevron* to the Board's interpretation of the definition of this aggravated felony (obstruction of justice).

And in other contexts, we have provided *Chevron* deference for the Board's interpretations that might indirectly impact future criminal prosecutions. For example, § 1326(a) criminalizes any illegal reentry, so any Board interpretation of the Immigration and Nationality Act affecting removal could indirectly impact future criminal liability under § 1326(a). Yet the Board often receives *Chevron* deference for interpretations that

---

[4] *See Soliman v. Gonzales*, 419 F.3d 276, 281–83 (4th Cir. 2005) (applying *Chevron* to theft or burglary, § 1101(a)(43)(G), but concluding that the Board's definition contradicted congressional intent); *Castillo v. Holder*, 776 F.3d 262, 267 (4th Cir. 2015) (finding *Chevron* appropriate for the same section but deciding the case by finding no categorical match instead); *Amos v. Lynch*, 790 F.3d 512, 518–19 (4th Cir. 2015) (acknowledging that "we are required to accept the Board's" reasonable construction of an ambiguous term and have done so in the aggravated felony context, but finding that there was no precedential interpretation on point); *Larios-Reyes v. Lynch*, 843 F.3d 146, 155 (4th Cir. 2016) (acknowledging the applicability of *Chevron* for "sexual abuse of a minor" in the same context as *Esquivel-Quintana*, 137 S. Ct. at 1572, but finding that there was no precedential decision to defer to).

We have also applied *Chevron* to the Board's interpretation of "moral turpitude," which can render an immigrant ineligible for cancellation or withholding or removal. *Ramirez v. Sessions*, 887 F.3d 693, 701–02 (4th Cir. 2018) (holding that *Chevron* applies in this area but there was no precedential decision); *Nunez-Vasquez v. Barr*, 965 F.3d 272, 279 (4th Cir. 2020) (same). This definition indirectly impacts criminal liability because by changing the scope of moral turpitude the Board is changing the scope of cancelling or withholding removal. This in turn changes who is subject to removal and thus subject to criminal sanctions for reentering the country in the future, just like an aggravated-felony finding does here.

8

affect the scope of removal under the Immigration and Nationality Act.  *See, e.g.*, *Sijapati v. Boente*, 848 F.3d 210, 213 (4th Cir. 2017); *see also Aguirre-Aguirre*, 526 U.S. at 424–25.

Supreme Court cases also reflect that the order of the civil and criminal proceedings and the type of statute matter.  It is true that no Supreme Court case has afforded *Chevron* deference in this situation.[5]  It is also true that the Court did not mention *Chevron* and indicated lenity would apply in a case in which immigration consequences depended on interpreting a criminal statute, over which the Board has no authority.  *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004); *see also Carachuri-Rosendo v. Holder*, 560 U.S. 563, 581 (2010) ("ambiguities in criminal statutes referenced in immigration laws should be construed in the noncitizen's favor").  But *Leocal* applied to criminal statutes that were also directly applied in civil contexts, not civil statutes that only indirectly might affect future criminal prosecutions.  And in a case much like this one, interpreting the term "controlled substance" in the Immigration and Nationality Act, the Court applied *Chevron* and held that the statute was unambiguous at Step One.  *Mellouli v. Lynch*, 135 S. Ct. 1980, 1989 (2015); *see also Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1572 (2017).

---

[5] Michael Kagan, Chevron's *Liberty Exception*, 104 IOWA L. REV. 491, 522–31 (2019) (explaining cases on this point); *see, e.g.*, *Torres v. Lynch*, 136 S. Ct. 1619, 1622 (2016) (determining the generic definition of an aggravated felony without reference to *Chevron*); *Lopez v. Gonzales*, 549 U.S. 47 (2006) (same); *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 581 (2010) (struck down the Board's construction of an "aggravated felony" offense without referencing *Chevron*); *Moncrieffe v. Holder*, 569 U.S. 184, 187 (2013) (holding that sharing marijuana not an aggravated felony).

This case involves the Board interpreting a civil section of the Immigration and Nationality Act, with no direct criminal application, over which they have been delegated authority, in a civil administrative proceeding. 8 U.S.C. § 1227(a)(2)(A)(iii); § 1103(a)(1); § 1229b(a)(3); § 1101(a)(43). The interpretation occurs only at the civil stage. Criminal sanctions can only potentially come later in a separate criminal proceeding where the Immigration and Nationality Act is not interpreted anew. *Id.* § 1326(a), (b)(2). For example, in a § 1326 illegal-reentry prosecution, that prosecution is a separate and distinct crime. And a defendant generally may not relitigate the validity of an underlying removal order. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 834–39 (1987); *see also* 8 U.S.C. § 1326(d) (setting requirements for collateral attack of an underlying removal order in § 1326 proceedings); *see also United States v. Perez-Paz*, 3 F.4th 120 (4th Cir. 2021) ("[Section] 1326 does not incorporate, as an element, the facts supporting the underlying" aggravated-felony removal order so the underlying facts need not be decided by a jury). Thus, the merits of the civil-administrative determination that a person has committed an "aggravated felony" and thus was removable is not at issue in a later § 1326 illegal-reentry prosecution. Instead, it is only the fact that the civil aggravated-felony determination was previously made that may increase the maximum punishment. Because the potential criminal consequence of this civil determination based on the interpretation of a civil statute are too attenuated, they do not bar *Chevron*'s application at Step Zero.

Pugin's reliance on the canon of lenity does not sway our conclusion. Lenity only applies to criminal statutes or the functional equivalent. *See Leocal*, 543 U.S. at 11 n.8 (lenity applies to an immigration case when it is interpreting a criminal statute); *Crandon*

10

*v. United States*, 494 U.S. 152, 158 (1990) (same); *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505 (1992) (plurality opinion) (applying the rule of lenity to tax statute with direct "criminal applications that carry no additional requirement of willfulness"). It is not enough that a determination under a civil statute might have future effect in a later criminal action based on different conduct. This is a civil proceeding interpreting a civil statute. Any ancillary criminal consequences are too attenuated. As a result, lenity cannot displace *Chevron* here.

So *Chevron* applies. We next consider (1) whether the term "relating to obstruction of justice" is ambiguous and (2) if so, whether the agency's interpretation is a reasonable construction of the language. *Chevron*, 467 U.S. at 843.

### 2. Step One: The phrase "relating to obstruction of justice" is ambiguous

Since *Chevron* applies, we must determine whether the term "relating to obstruction of justice" is ambiguous about whether an ongoing proceeding or a reasonably foreseeable proceeding must be obstructed. In *Esquivel-Quintana*, the Supreme Court considered the generic definition of "sexual abuse of a minor" as provided in § 1101(a)(43)(A) but did not give *Chevron* deference to the Board's interpretation because the text, dictionaries, related federal statutes, state statutes, and the Model Penal Code provided a clear answer. 137 S. Ct. at 1569–73, 1571 n.3. Here, those same sources show that the term "relating to obstruction of justice" is ambiguous.

We begin by addressing Pugin's primary argument: that § 1101(a)(43)(S) uses "obstruction of justice" as a term of art referencing Chapter 73 of Title 18 of the U.S. Code,

11

which is titled "Obstruction of Justice." *See Valenzuela Gallardo*, 968 F.3d at 1064; *Flores v. Att'y Gen. United States*, 856 F.3d 280, 294 (3d Cir. 2017). *Id.* The dissent endorses a similar argument, suggesting that "obstruction of justice" is a term of art dating back to the 19th century that has *always* required a pending proceeding, Dissenting Op. at 38, and that the 1946 Congress was aware of this rigid definition of "obstruction of justice" when it enacted § 1101(a)(43)(S), effectively codifying that term of art in Chapter 73. Thus, the reasoning goes, Chapter 73 is the full extent of "obstruction of justice" and because *almost all* the crimes under that title require an ongoing proceeding, the phrase unambiguously requires an ongoing proceeding. We disagree.

The phrase "obstruction of justice" in § 1101(a)(43)(S) is not an unambiguous reference to Chapter 73. Other aggravated felonies within the Immigration and Nationality Act expressly cross reference their definitions to parts of the criminal code. *See* 8 U.S.C. § 1011(a)(43)(B)–(F), (H)–(P); *see also, e.g.*, § 1101(a)(43)(H) (designating as an aggravated felony "an offense described in section 875, 876, 877, or 1202 of title 18"). But § 1101(a)(43)(S) does not. That it does not signifies that the term "obstruction of justice" is not limited by an unreferenced chapter in the U.S. Code. *See, e.g.*, *Esquivel-Quintana*, 137 S. Ct. at 1571 (refusing to fully rely on another statute for this reason); *Soliman*, 419 F.3d at 283. Pugin says the subsection does not cross reference Chapter 73 because Congress wanted to include state laws that may not perfectly match the federal elements, but that argument is not persuasive. In fact, it undermines Pugin's argument by showing that Congress wanted obstruction of justice to have a broader definition than what was in

12

Chapter 73.    "Obstruction of justice" is not an unambiguous phrase limiting § 1101(a)(43)(S) to the narrow confines of Chapter 73.

This leads to the second reason that the term obstruction of justice is ambiguous: State laws vary wildly and often do not require a connection to an ongoing proceeding. When the Immigration and Nationality Act was passed, only seventeen states used the phrase "obstruction of justice" or "obstructing justice" in their criminal codes. *Valenzuela Gallardo II*, 27 I. & N. Dec. at 451 n.4.  Of those states, only three required an ongoing proceeding while the fourteen others required only a reasonably foreseeable investigation. *Id.*[6]  The Model Penal Code similarly criminalizes the act of concealing a crime without a pending proceeding.  Model Penal Code § 242.3.  That crime is listed in Article 242, which is entitled "Obstructing Governmental Operations; Escapes."  *Id.*  That the majority of applicable states (fourteen of seventeen) and the Model Penal Code believed that an ongoing proceeding was not required as a condition of obstructing justice when this section was passed, counsels us to find that the phrase is ambiguous on this point.

Third, even some federal obstruction laws in Chapter 73 do not require an ongoing proceeding.  For example, § 1512, which criminalizes tampering with witnesses, defines a proceeding as one that "need not be pending or about to be instituted at the time of the

---

[6] The Board in *Valenzuela Gallardo II* explained:  "Of these jurisdictions, three States limited the concept of obstruction of justice to offenses involving interference in a pending or ongoing investigation or judicial proceeding.  The remaining jurisdictions extended this concept to offenses involving interference with a criminal investigation or a reasonably foreseeable proceeding."  27 I. & N. Dec. at 451 n.4 (citations omitted).  *See also People v. Jenkins*, 964 N.E.2d 1231, 1240–41 (Ill. App. Ct. 2012); *Wilbourn v. State*, 164 So. 2d 424, 425–26 (Miss. 1964); *State v. O'Neill*, 682 A.2d 943, 946 (Vt. 1996); *Turner v. Commonwealth*, 460 S.E.2d 605, 607 (Va. Ct. App. 1995).

offense." 18 U.S.C. § 1512(f)(1).  Various subsections of that statute criminalize an array of obstructive activity:  from obstructing the reporting of a possible crime to preventing witnesses from attending an ongoing judicial proceeding.  *See, e.g.*, 18 U.S.C. § 1512 (a)(1)(A), (a)(1)(C), (a)(2)(C), (b)(3), (d)(2).

Pugin, supported by the Third and Ninth Circuits, argues that some subsections in § 1512 explicitly do not require an ongoing proceeding because they are exceptions that prove the rule.  *Valenzuela Gallardo*, 968 F.3d at 1065; *Flores*, 856 F.3d at 288–89.  But during oral arguments Pugin admitted that § 1512 was not the only obstruction-of-justice provision in Chapter 73 that does not require an ongoing proceeding.  For example, Section 1510(a) criminalizes any use of bribery to stop someone from going to the police about a federal criminal violation (thus applying even before an investigation is pending).  *See also* § 1518 (criminalizing attempts to prevent or delay the communication of information to law enforcement about health-care offenses); § 1519 (similar for bankruptcy); *Yates v. United States*, 574 U.S. 528, 547–48 (2015) (finding that § 1519 covers proceedings not "even on the verge of commencement" "no matter whether the investigation is pending or merely contemplated").  So even if we were limited to Chapter 73 for defining obstruction of justice, various crimes included in Chapter 73 reflect that obstruction of justice can include crimes before an investigation has even begun.

The dissent somehow disagrees, suggesting that obstruction can never occur before an investigation.  Dissenting Op. at 47.  This is wrong both in fact and as a matter of logic.  As just mentioned, some obstruction-of-justice offenses laid out in Chapter 73 can occur even before an investigation.  *See* §§ 1510, 1512, 1518 & 1519.  But even without those

14

explicit counterexamples, the logical chain the dissent relies on won't hold. The dissent rightly points out that Fourth Circuit precedent requires a nexus to a proceeding *and* holds that an investigation is not a proceeding. Dissenting Op. at 46–47. But the dissent then incorrectly concludes that those two premises taken together prove that obstruction can never occur before an investigation. But our precedent only requires a nexus to a *foreseeable* proceeding under § 1512, which is to say a *future* proceeding that has not yet started. *See United States v. Young*, 916 F.3d 368, 385 (4th Cir. 2019) (requiring a nexus to a proceeding that was "either pending or was reasonably foreseeable"). So a criminal may obstruct foreseeable proceedings before an investigation begins.

This distinction between a foreseeable proceeding and an existing proceeding is crucial. In fact, it is the very ambiguity we are examining: whether "relating to obstruction of justice" requires an existing proceeding or just a foreseeable proceeding. The dissent conflates the two. First, the dissent concedes that "non-pending but reasonably foreseeable official proceedings" can be obstructed under § 1512. *See* Dissenting Op. at 45 (citing *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707–08 (2005)); *see also Marinello v. United States*, 138 S. Ct. 1101, 1110 (2018) ("the Government must show that the proceeding was pending . . . or, at the least, was then reasonably foreseeable by the defendant."); *Young*, 916 F.3d at 386 (requiring that "the defendant contemplate[] a particular, foreseeable proceeding"); *United States v. Sutherland*, 921 F.3d 421, 426–28 (4th Cir. 2019). But after conceding that the proceeding need only be foreseeable, the dissent confusingly claims that non-pending, foreseeable proceedings "must be connected

15

to *existing* proceedings." Dissenting Op. at 46 (emphasis added). That cannot be right. Proceedings that are foreseeable but not yet pending are, by definition, not yet in existence.

Obstruction-of-justice crimes outside Chapter 73 can also be committed before a proceeding or an investigation begins. For example, the crime of accessory after the fact covers "[w]hoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to *hinder or prevent his apprehension*, trial or punishment." 18 U.S.C. § 3 (emphasis added). In *United States v. White*, 771 F.3d 225, 232–34 (4th Cir. 2014), we sustained a conviction under § 3 when the defendant lied to an insurance representative about the cause of an arson fire even though there was no ongoing criminal proceeding because it was "common sense" that the representative would tell the police about suspected arson and lying would help avoid apprehension. So like §§ 1510, 1512, 1518, and 1519, accessory after the fact under § 3 does not require an ongoing proceeding.

Pugin contends that federal accessory after the fact cannot be a form of obstruction of justice since it is not codified under the obstruction-of-justice section. *See Valenzuela Gallardo*, 968 F.3d at 1064.[7] But courts have long considered accessory after the fact to

_____

[7] While a section's location in the Code can sometimes be a legitimate tool of interpretation, it is a weak one that does little work here. The placement of § 3 in one Chapter or another simply does not tell us much about the meaning of the phrase "obstruction of justice." We cannot read Congress's placement of § 3 accessory after the fact in Chapter 1 ("General Provisions") instead of Chapter 73 ("Obstruction of Justice") as a clear instruction that accessory after the fact isn't a crime that obstructs justice. Nor can we read the heading of Chapter 73 as a clear instruction that every single crime that might obstruct justice is housed in that Chapter. The Code Chapters necessarily involve some overlap in themes and topics, *compare* 18 U.S.C. ch. 79 ("Perjury") *to* 18 U.S.C. ch. (Continued)

16

be an obstruction of justice as a matter of plain meaning.[8]  And thirteen of the seventeen

states that had obstruction-of-justice laws when the Immigration and Nationality Act was

passed included accessory after the fact as a crime obstructing justice either explicitly or

in their caselaw.[9]  Moreover, several circuits have held that other sections in the U.S. Code

outside Chapter 73 qualify as aggravated felonies under the Immigration and Nationality

Act's obstruction-of-justice provision.  *See Renteria-Morales v. Mukasey*, 551 F.3d 1076,

1087 (9th Cir. 2008) (failure to appear under 18 U.S.C. § 3146 (2006)); *Alwan v. Ashcroft*,

47 ("Fraud and False Statements"), so the placement of certain provisions in or out of Chapter 73 fails to establish the meaning of the phrase "obstruction of justice."

[8] *See, e.g.*, *United States v. Brown*, 33 F.3d 1002, 1004 (8th Cir. 1994) ("The gist of being an accessory after the fact" under § 3 "lies essentially in obstructing justice by rendering assistance to hinder or prevent the arrest of the offender after he [or she] has committed the crime."); *United States v. Willis*, 559 F.2d 443, 444 (5th Cir. 1977) (per curiam) (same); *United States v. Barlow*, 470 F.2d 1245, 1252–53 (D.C. Cir. 1972) (same); *Virgin Islands v. Aquino*, 378 F.2d 540, 553 (3d Cir. 1967) ("An accessory after the fact is one who, knowing that a crime has been committed, obstructs justice by giving comfort or assistance to the offender in order to hinder or prevent his apprehension or punishment."). The Ninth Circuit argued that these cases only refer to accessory after the fact as obstruction in dicta. *Valenzuela Gallardo*, 968 F.3d at 1064 n.8.  But this misses the point. That many federal courts have commonly referred to accessory after the fact as obstruction of justice gives us insight into the linguistic meaning of the term obstruction of justice and any ambiguity it encompasses.

[9] Colo. Rev. Stat. § 18-8-105; Mont. Code Ann. § 45-7-303(a)–(b); Ohio Rev. Code Ann. § 2921.32(A)(1), (3); Utah Code Ann. § 76-8-306(b), (e); *Staten v. State*, 519 So. 2d 622, 626 (Fla. 1988) ("The accessory after the fact is no longer treated as a party to the crime but has come to be recognized as the actor in a separate and independent crime, obstruction of justice."); *Moore v. State*, 240 S.E.2d 68, 69–70 (Ga. 1977) (same); *People v. Jones*, 407 N.E.2d 1121, 1124 (Ill. App. Ct. 1980) (same); *State v. Chism*, 436 So. 2d 464, 467 n.2 (La. 1983) (same); *Osborne v. State*, 499 A.2d 170, 173 (Md. 1985) (same); *State v. Brown*, 543 S.W.3d 647, 649–50 & n.8 (Mo. Ct. App. 2018); *State v. Lynch*, 399 A.2d 629, 634–35 (N.J. 1979); *State v. Sliger*, No. 24, 1991 WL 102672, at *6–7 (Tenn. June 17, 1991) (same); *State v. Petry*, 273 S.E.2d 346, 349 (W. Va. 1980) (same); *State v. Rundle*, 500 N.W.2d 916, 925 (Wis. 1993) (same).

17

388 F.3d 507, 514 (5th Cir. 2004) (contempt of court under 18 U.S.C. § 401(3) (2000)). So there is no reason to think that obstruction of justice is limited to the offenses listed in Chapter 73. At the very least, the fact that other federal obstruction laws do not require an ongoing proceeding implies that the term obstruction of justice is ambiguous about the timing of the obstructed proceeding.

Fourth, the Immigration and Nationality Act defines "aggravated felony" not just as "obstruction of justice," but as "relating to obstruction of justice." We have repeatedly read the term "relate to" expansively, requiring only some relation. *See United States v. Hardin*, 998 F.3d 582, 588 (4th Cir. 2021) (citing *United States v. Colson*, 683 F.3d 507, 511 (4th Cir. 2012); *United States v. Spence*, 661 F.3d 194, 200 (4th Cir. 2011)); *see also Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1197 (2017) (under the federal-officer-removal statutes "relate to" "expresses a broad pre-emptive purpose"). So even if the term "obstruction of justice" standing alone required an ongoing proceeding, the "relating to" clause would broaden that understanding, including crimes that hinder the discovery or resolution of a crime even though a proceeding has yet to begin. At the least, the potential scope of this phrase is ambiguous.

Pugin pushes back, arguing that because "relating to" refers to a list—"obstruction of justice, perjury or subornation of perjury, or bribery of a witness"—the *noscitur a sociis* canon means that whatever offenses are encompassed in the phrase "relating to" must be similar to the ones in the list. Assuming the crimes in the list all require an ongoing proceeding, he argues that any offenses "relating to" the obstruction of justice must as

18

well.[10] But the other crimes need not involve an ongoing proceeding. *See Ho Sang Yim v. Barr*, 972 F.3d 1069, 1080–82 (9th Cir. 2020) (giving *Chevron* deference to a Board interpretation of "relating to . . . perjury" that did not require the statement to have been made during a proceeding). "Relating to" expands; it does not limit. So we cannot read Pugin's limitation into the statute. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992).

Pugin relies on a few other sources, but none overcome the strong evidence that obstruction of justice is an ambiguous phrase. First, Pugin argues that the Board and some courts have long required an ongoing proceeding, and the Board's current position is a complete reversal. *See In re Espinoza-Gonzalez*, 22 I. & N. Dec. at 892; *Trung Thanh Hoang v. Holder*, 641 F.3d 1157, 1164 (9th Cir. 2011) (deferring to *In re Espinoza-Gonzalez*). But even under the prior regime, some courts found the phrase ambiguous, which permitted them to defer to the Board's then-current interpretation.[11] And agencies

---

[10] The Ninth Circuit recently gave *Chevron* deference to a Board interpretation of "relating to . . . perjury" that did not require the statement to have been made during a proceeding. *Ho Sang Yim v. Barr*, 972 F.3d 1069, 1080–82 (9th Cir. 2020) (deferring to *Matter of Alvarado*, 26 I. & N. Dec. 895, 901 & n.11 (B.I.A. 2016) and noting that the federal perjury statute, 18 U.S.C. § 1621, does not require an ongoing proceeding).

[11] Several courts have deferred to the Board's interpretation in *Espinoza-Gonzalez*. *See Alwan v. Ashcroft*, 388 F.3d 507, 514 (5th Cir. 2004); *Victoria-Faustino v. Sessions*, 865 F.3d 869, 876 (7th Cir. 2017) (relying on *Espinoza-Gonzalez* not *Valenzuela Gallardo* since the Ninth Circuit remanded it). Even the Ninth Circuit used to defer to the Board under *Espinoza-Gonzalez*. *See Trung Thanh Hoang v. Holder*, 641 F.3d 1157, 1161 (9th Cir. 2011); *Hoang v. Holder*, 641 F.3d 1157, 1160–61 (9th Cir. 2011); *Renteria-Morales*, 551 F.3d at 1087; *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 860 (9th Cir. 2008). But *Espinoza-Gonzalez* required an ongoing proceeding, and no court has deferred to *Valenzuela Gallardo*. Still, the fact that multiple courts have deferred the Board's definition of obstruction of justice reflects that the phrase is ambiguous generally.

19

may change their interpretation of federal law as long as the new definition is reasonable. *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005).

Second, legal dictionaries somewhat favor Pugin's position, but not clearly. And they do not defeat the ambiguity created by other sources. Merriam Webster defines "obstruction of justice" to include "the crime or act of willfully interfering with the process of justice and law esp[ecially] by influencing, threatening, harming, or impeding a witness, potential witness, juror, or judicial or legal officer or by furnishing false information in or *otherwise impeding an investigation or legal process*." Merriam-Webster's Dictionary of Law 337 (1996) (emphasis added); *Valenzuela Gallardo*, 968 F.3d at 1063 (relying on this definition to require a proceeding). This definition arguably requires some sort of process (including an "investigation"), but it is not clear if the process must be ongoing or just foreseeable. Black's Dictionary defines obstruction in reference to the administration of justice or a pending proceeding as well. *Obstructing Justice*, Black's Law Dictionary 1077 (6th ed. 1990). But another dictionary defines "obstruction of justice" as "a broad phrase that captures every willful act of corruption, intimidation, or force that tends somehow to impair the machinery of the civil or criminal law." B. Garner, A Dictionary of Modern Legal Usage 611 (2d ed. 1995). Given the "broad" modifier, "impair[ing] the machinery of . . . criminal law" could include trying to ensure the police never learn of a crime. *See, e.g.*, 18 U.S.C. § 1510. These definitions do not render the phrase unambiguous.

Considering federal and state laws, the Model Penal Code, and dictionary definitions, it is at least ambiguous as to whether the phrase "relating to obstruction of

20

justice" requires the obstruction of an ongoing proceeding.  So we move to *Chevron* Step Two to determine whether the Board's generic definition is a reasonable interpretation of the ambiguous phrase.

### 3.  Step Two:  The Board's generic definition is reasonable

To receive deference, the Board's generic definition of obstruction of justice must be reasonable.  It is.  The Board relied on many of the sources mentioned above to come to the reasonable conclusion that an element of "an offense relating to obstruction of justice" is interference in an ongoing *or reasonably foreseeable* proceeding.

The Board began by noting that it was crafting a generic definition based on the "contemporary meaning" of the phrase when the statute was passed.  *In re Valenzuela Gallardo II*, 27 I. & N. Dec. at 452–53.  It acknowledged that most of the sections in Chapter 73 of Title 18 ("Obstruction of Justice") require an ongoing proceeding but § 1512 and § 1519 do not.  *Id*. at 455.  But the Board did not consider Chapter 73 to be the "sole reference" under federal law of the meaning of obstruction of justice as 18 U.S.C. § 3, which provides liability for being an accessory after the fact, is also considered a form of obstruction of justice.  *Id*. at 457–59 (citing federal cases and state laws, the Sentencing Guidelines, and the Model Penal Code to support this point).  And as mentioned above, that offense does not require an ongoing proceeding.  *Id.* at 457.  So using Supreme Court precedent, the Board limited the definition to reasonably foreseeable proceedings.  *Id*. at

21

455.[12]    So the Board concluded that an offense "relating to obstruction of justice" as used in 8 U.S.C. § 1101(a)(43)(S) requires "(1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere either in an investigation or proceeding that is ongoing, pending, or reasonably foreseeable by the defendant, or in another's punishment resulting from a completed proceeding." *Id*. at 460.

Given that some obstruction-of-justice offenses that existed at the time of the Immigration and Nationality Act's passage did not require an ongoing proceeding, we cannot conclude that the Board's definition was "arbitrary, capricious, or manifestly contrary to the statute." *Mahmood v. Sessions*, 849 F.3d 187, 195 (4th Cir. 2017).[13]    We therefore defer to the Board's definition.

### B.    Virginia law requires specific intent and is a categorical match

We now must determine whether the Board's definition of obstruction of justice categorically matches the elements of Pugin's crime of conviction—accessory after the

---

[12] *See Arthur Andersen LLP*, 544 U.S. at 707–08 (requiring the Government to prove that a proceeding was "foreseen" to convict a defendant under § 1512); *Marinello*, 138 S. Ct. at 1110 (the Government must show that the proceeding was, at least, "reasonably foreseeable by the defendant" at the time of the obstructive conduct); *Young*, 916 F.3d at 386 (holding that to convict under § 1512(c)(2) the government must prove "that there was a 'nexus' between the defendant's conduct and the pending, or foreseeable, official proceeding").

[13] The dissent reads the Board's opinion to say "that a formal nexus is not required by Chapter 73" and finds that unreasonable. Dissenting Op. at 54. But this again blurs the distinction between foreseeable and ongoing proceedings. The Board interpretation does require a nexus, but a nexus to a reasonably foreseeable proceeding, not an ongoing proceeding. That is the very interpretation that the Fourth Circuit has already adopted. *Young*, 916 F.3d at 386; *see also Sutherland*, 921 F.3d at 426.

fact under Virginia law.  To do so, we employ the categorical approach.  *Mathis*, 136 S. Ct. at 2248.  The categorical approach requires us to judge whether the elements of the state offense fall within the generic definition of an "offense relating to obstruction of justice."  *Gordon v. Barr*, 965 F.3d 252, 257 (4th Cir. 2020).  "[I]f the state offense 'sweeps more broadly,' criminalizing more conduct than the federal offense, the prior conviction does not qualify as a removable offense."  *Id*.  But that is true only if there is a "'realistic probability,' not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."  *Castillo v. Holder*, 776 F.3d 262, 267–68 (4th Cir. 2015).

We give no deference to the Board's construction of state law or determination of its fit with federal law.  *Gordon*, 965 F.3d at 257.  Instead, we look to state-court interpretations of the state law and review the categorical fit between the state and federal law de novo.  *Id*.  Pugin argues that Virginia law fails to include the specific intent element of the Board's definition.[14]  We find it clear that Virginia accessory after the fact includes a specific-intent requirement and is a categorical match with the Board's generic definition of obstruction of justice.  So Pugin is removable.

Accessory after the fact under Virginia law requires that a "felony must be completed"; the defendant "must know that the felon is guilty"; and the defendant "must

---

[14] Recall that the Board defines "offenses relating to obstruction of justice" as generically requiring "(1) an affirmative and intentional attempt (2) that is motivated by a *specific intent* (3) to interfere either in an investigation or proceeding that is ongoing, pending, or reasonably foreseeable by the defendant, or in another's punishment resulting from a completed proceeding."  *In re Valenzuela Gallardo II*, 27 I. & N. Dec. 449, 460 (B.I.A. 2018) (emphasis added).

receive, relieve, comfort or assist him." *Wren v. Commonwealth*, 67 Va. 952, 956 (1875). To Pugin, this crime does not categorically match because the generic offense requires the specific intent to interfere while Virginia law only requires the lower mens rea of knowledge. The problem with that argument is that it has been expressly rejected by the Virginia Supreme Court: "*The true test* whether one is accessory after the fact, is to consider whether what he did was done by way of personal help to his principal, *with the view of enabling his principal to elude punishment . . . .*" *Id*. at 957 (emphasis added). Acting with the view of enabling another to elude punishment is synonymous with acting with the specific intent to enable another to elude punishment.

The facts of *Wren* confirm that specific intent is needed to convict someone of being an accessory after the fact. Wren was a private detective who tried to help a man, Fowlkes, get money back from a swindler named Dull. *Id*. at 961–62. Wren brought Dull to meet with Fowlkes and his attorney. Although Wren knew that the attorney intended to get a warrant for Dull's arrest, he did not mention that fact to Dull. *Id*. All he did was caution the attorney against procuring the warrant before the money was recovered. *Id*. The court made clear why this was not sufficient to find him guilty of being an accessory after the fact to the fraud because: "*His object* . . . was to get the money of which Fowlkes had been swindled. But there is no evidence to show that *his design* was to enable Dull to elude or escape punishment." *Id*. (emphasis added). The court made clear that mere knowledge of another's felony and an attempt to conceal it or to frustrate an arrest could make Wren guilty of other crimes, but not accessory after the fact. *Id*. That comparison shows that the key to accessory after the fact under Virginia law is the specific intent to help the felon

24

avoid punishment. *See id.* at 95–67 (stating that "taking money *to allow* [a felon] to escape" or "supplyi[ng] him with money, a horse or other necessaries, *in order to enable* him to escape . . . would constitute a man accessory after the fact" (emphasis added)); *Buck v. Commonwealth*, 116 Va. 1031, 1037 (1914) ("[I]t is not proven that plaintiff in error did anything whatever, by way of personal help to [the person avoiding capture], *with the view to enabling him to elude punishment*" nor was there any "evidence whatever in the record *tending to prove a motive*." (emphasis added)); *Suter v. Commonwealth*, 67 Va. App. 311, 319 (2017) ("Finally, the aid must have been given to the felon personally for the purpose of hindering the felon's apprehension, conviction, or punishment." (citations omitted)); *see also Schmitt v. True*, 387 F. Supp. 2d 622, 640 (E.D. Va. 2005) (holding that the defendant did not have the "requisite mens rea to have been charged, or convicted, as an accessory after the fact" under Virginia law when he purposefully helped a felon under the mistaken belief that he was a different person).

Other sources also reveal that Virginia accessory after the fact requires specific intent. Most importantly, the commonly used Virginia model jury instructions require intent to help a known felon escape capture or punishment. *See Mathis*, 136 S. Ct. at 2257 (acknowledging the usefulness of jury instructions when the state law is not clear in a similar context); *Bah v. Barr*, 950 F.3d 203, 210 (4th Cir. 2020) (relying on Virginia model jury instructions). The Virginia Pattern Jury Instructions requires the Commonwealth to "prove beyond a reasonable doubt each of the following elements of that crime" including "(4) That the defendant comforted, relieved, hid, or in any other way assisted the person who committed the (name of crime) *with the intent of helping that person escape or delay*

25

*capture, prosecution or punishment*." 1 Va. Model Crim. Jury Instr. No. 3.300, Accessory After the Fact (emphasis added). Similarly, the Virginia Practice Series says, "there are two mental states which must be proven [for accessary after the fact]: knowledge (that the felony had been committed) and *intent* (that apprehension, etc., be hindered)." Principal and Accessory, Va. Prac. Criminal Offenses & Defenses P31 (emphasis added) (citing *Wren*, 67 Va. at 956); *see also* Wayne R. LaFave, *Criminal Law* § 13.6, at 753–54 (5th ed. 2010) (stating that general common law requires specific intent); William Blackstone, *Commentaries on the Laws of England*, Volume 4, page 38, note 1 (Oxford 1765–1769) (same); MPC 242.3 (1985) (same).

Faced with this overwhelming evidence, Pugin argues that the two most recent Virginia Supreme Court cases discussing accessory after the fact do not discuss specific intent, so that element must no longer exist (if it ever did). But those cases do not stand for the proposition that specific intent is no longer required. In the first case, a man drove some friends around while they drank and stopped at several stores where, unbeknownst to the driver, his friends robbed the stores. *Manley v. Commonwealth*, 222 Va. 642, 645 (1981). The court listed the three elements from *Wren* and then concluded that there was no evidence the defendant knew his friends had committed a felony, so his conviction could not be sustained. *Id*. Specific intent was not raised since the defendant did not even know the felony was committed.

The second case did not involve a sufficiency-of-the-evidence claim. Instead, it reviewed a trial court's denial of an instruction on accessory after the fact as a lesser included offense of murder. *Commonwealth v. Dalton*, 259 Va. 249, 252–53 (2000). The

26

Virginia Supreme Court rejected the defendant's argument that accessory after the fact was a lesser included offense of murder because accessory after the fact requires knowledge that the person committed a felony. *Id*. at 253–54. But that holding tells us little about whether specific intent is an element of the crime. Pugin argues that if specific intent was required, the court would have mentioned this difference as well. True, neither the Virginia Supreme Court nor the lower courts mentioned specific intent as a difference between the two crimes. But we refuse to read too much into the fact that the court did not include that alternative argument when it already had sufficient grounds to decide the case.

Pugin then marshals a handful of Virginia appellate court decisions to argue that someone could be convicted of being an accessory after the fact without specific intent. But specific intent was not raised as an issue in any of those cases. *See, e.g.*, *Dunn v. Commonwealth*, No. 1231-96-2, 1997 WL 147448, at *1 (Va. Ct. App. Apr. 1, 1997) (unpublished) (While specific intent was not analyzed, the court did say that "[i]t must be shown that the alleged accomplice *intended to encourage or help* the person committing the crime to commit it." (emphasis added));[15] *Powell v. Commonwealth*, 31 Va. App. 167, 172 (1999) (reversing a conviction because no evidence showed that the underlying offense

---

[15] In *Dunn*, the court framed intent as helping the person "commit" the crime. Yet the accessory-after-the-fact offense necessarily requires the offense to have already been committed when aid is provided. *Dunn*, 1997 WL 147448, at *1 ("In order to convict as an accessory after the fact, the felony must be completed"); *see also Suter*, 67 Va. App. at 320 (holding that one cannot be an accessory after the fact for murder before the victim dies because the felony was not completed).

was committed).[16]  And in each case, the jury could have made reasonable inferences that the defendant's conduct was done with the specific intent to help the principal avoid criminal punishments even though the perpetrators had yet to fall under police scrutiny. So sufficiency cases may not discuss specific intent because it is easily inferred from another element:  helping a known felon after they committed a felony.  *See White*, 771 F.3d at 232 (evidence was sufficient to sustain accessory-after-the-fact conviction under 18 U.S.C. § 3 when defendant lied to insurance agent about how a fire at his building was started because "the jury could make a couple of obvious common-sense inferences" that White knew that the insurance representative would turn over evidence of an arson to police and that lying to them would help him and his co-conspirator avoid apprehension).  So none of the cited cases imply, much less show, a realistic possibility that the law would apply without specific intent.[17]

---

[16] The dissent adds another opinion to the list, *Johnson v. Commonwealth*, No. 1216-01-1, 2002 WL 533689, at *1–2 (Va. Ct. App. Apr. 9, 2002) (unpublished).  Dissenting Op. at 62.  It is conceivable that *Johnson* is a case in which the jury would have had some trouble finding the specific intent to help the principal evade justice.  Maybe *Johnson* was like *Wren*: just in it for the money.  But specific intent was not raised to the court by the defendant, not addressed in the opinion, and even if it were, an unpublished, intermediate-court opinion—especially one with such scant legal analysis—cannot overrule *Wren*.

[17] Pugin makes two other arguments worth a brief response.  First, he argues that Virginia has codified the punishment for accessory after the fact within the accessory section of its criminal code, not the "Crimes Against The Administration of Justice" section.  *See* Va. Code Ann. § 18.2–19; *id.* §§ 18.2–460 to 18.2–472.  This argument might bear on the *Chevron* inquiry but does not affect whether the law is a categorical match to the generic definition.  That is a question of federal law, so only the elements matter. *Shular v. United States*, 140 S. Ct. 779, 783 (2020) (noting that the label a state gives a crime is irrelevant because the elements are what matters).

Pugin's next argument is that the limiting clause in the punishment statute implies that an accessory-after-the-fact must act with an intent to avoid punishment: (Continued)

28

State caselaw and other sources make clear that a conviction for being an accessory after the fact under Virginia law requires specific intent to help a known felon avoid punishment. And there is no realistic possibility that the law would be applied when the defendant did not have the specific intent to interfere with the process of justice. So Virginia accessory after the fact categorically matches the Board's generic definition of obstruction of justice.[18]

\*      \*      \*

This case sits at the intersection of tricky issues of statutory interpretation and deference to the executive in a realm where his authority is near its zenith. At least in this case, the executive branch's reasonable interpretation of the ambiguous phrase "relating to

---

> However, no person in the relation of spouse, parent or grandparent, child or grandchild, or sibling, by consanguinity or affinity, or servant to the offender, who, after the commission of a felony, aids or assists a principal felon or accessory before the fact to avoid or escape from prosecution or punishment, shall be deemed an accessory after the fact.

Va. Code Ann. § 18.2-19. Pugin contends that if the law limited liability to those who acted intending to help another avoid criminal punishment, then the statute would not need to explicitly limit punishment to those who assist someone in "avoid[ing] or escap[ing] from prosecution or punishment." But this section only eliminates liability for a certain class of people—family members and servants—not from a certain class of assistance as Pugin claims. The law is merely making the nature of the crime clear before explicitly exempting a small class of people. That the law expressly mentions the specific-intent requirement in fact bolsters the conclusion that such intent is a required element.

[18] Even if Virginia law requires specific intent, Pugin argues that it does not necessarily require a specific intent to reduce the likelihood of a criminal punishment resulting from an ongoing or reasonably foreseeable proceeding. But Pugin did not exhaust that argument in the proceedings before the immigration judge or the Board, *see* A.R. 28–33, 168–70, so we lack jurisdiction to address it, *Massis v. Mukasey*, 549 F.3d 631, 639 (4th Cir. 2008).

29

obstruction of justice" is due *Chevron* deference.  The text, federal laws, state laws, and other sources show that obstruction of justice is ambiguous, and the Board's interpretation was reasonable.

But this case is not just about deference.  It is also about the interaction between federal and state laws.  After reviewing Virginia state court decisions, jury instructions, and other sources, we have determined that Virginia accessory after the fact requires specific intent to assist a known felon in avoiding criminal consequences.  As a result, Virginia accessory after the fact categorically matches the Board's generic definition of obstruction of justice.  So Pugin committed an aggravated felony, and the Board's decision finding Pugin removable is

AFFIRMED.

30

GREGORY, Chief Judge, dissenting:

The majority concludes that because the phrase "in relation to obstruction of justice" in § 1101(a)(43)(S) is ambiguous, the Board of Immigration Appeals' ("BIA") renewed interpretation of this provision is due *Chevron* deference. The majority also concludes that the BIA's interpretation of "reasonably foreseeable"—in the context of before an investigation or proceeding—is reasonable. Because, in my view, the phrase is not ambiguous, the BIA is not due *Chevron* deference. However, even if § 1101(a)(43)(S) is ambiguous, the BIA's conclusion that a formal nexus to an ongoing investigation is not required—based solely on the express exception in § 1512 and the catchall provision that it wrongly interpreted—is unreasonable. Thus, I disagree that Petitioner's conviction of "Accessory After the Fact to a Felony," under § 18.2–19 of the Virginia Code, is a categorical match with the generic offense of § 1101(a)(43)(S). For these reasons, I respectfully dissent.

## I.

While I agree that the BIA is due deference at step zero of *Chevron*, I disagree with the majority's holding that the BIA is due deference at steps one and two.

### A.

At step zero, the majority concludes that because the Immigration and Nationality Act ("INA") is a civil statute, and since any collateral criminal consequences are "too attenuated," the BIA is afforded *Chevron* deference. Maj. Op. at 7. While I agree that the BIA is due deference at step zero, I have some reservations.

31

Although the INA is a civil statute, it has criminal application because a noncitizen who is removed under § 1101(a)(43) and later reenters will face increased criminal punishment which they would not have faced otherwise. 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1326(b)(2); 1327. When a statutory interpretation "involves a statute, whose provisions have both civil and criminal application, our task merits special attention because our interpretation applies uniformly in both contexts." *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012). In such instances, "we follow 'the canon of strict construction of criminal statutes, or rule of lenity.'" *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997)).

Of note, two sister circuits have discussed § 1101(a)(43)'s dual-application in the context of the INA's "aggravated felony" definition.[1] *Valenzuela Gallardo v. Barr*, 968 F.3d 1053, 1059–61 (9th Cir. 2020) ("*Valenzuela Gallardo II*"); *Esquivel-Quintana v. Lynch*, 810 F.3d 1019, 1028 (6th Cir. 2016) (Sutton, J., dissenting in part), *rev'd sub nom.*, 137 S. Ct. 1562 (2017). In both cases, the statute had both criminal and civil applications and the circuits examined whether an application of *Chevron* in one context and the rule of lenity in another context would result in conflicting interpretations. Judge Sutton reasoned that because statutes may only have a single meaning, and the rule of lenity—which

---

[1] Both the Ninth Circuit and Sixth Circuit agreed without much discussion that § 1101(a)(43) is a dual-application statute. For example, the "aggravated felony" definition is used in a criminal provision of the INA at 8 U.S.C. § 1327 (codifying the federal offense of assisting with unlawful entry to the United States as to an alien inadmissible for having committed an aggravated felony); and 8 U.S.C. § 1253(a)(1) (codifying the federal offense of failure to leave the United States upon a final order of removal based on commission of an aggravated felony).

32

requires that the criminal definition controls—*Chevron* cannot be applied to such statutes. *See Esquivel-Quintana*, 810 F.3d at 1027–32 (Sutton, J.). "Statutes are not chameleons that mean one thing in one setting and something else is another. . . . Because a single law should have a single meaning, the 'lowest common denominator' . . . governs all of its applications." *Id.* (quoting *Clark v. Martinez*, 543 U.S. 371, 380 (2005)) ("Since the founding, it has been the job of Article III courts, not Article II executive-branch agencies, to have the final say over what criminal laws mean.").

Despite this concern, neither circuit ultimately adopted this argument. The Ninth Circuit briefly considered § 1101(a)(43)'s dual-application in a footnote, and acknowledged there was less reason to defer, but still granted *Chevron* deference at step zero to an on-point precedential BIA decision. *Valenzuela Gallardo II*, 968 F.3d at 1061–62. It also pointed to two Supreme Court decisions where *Chevron* deference was available, but the Court declined to apply it. *See id.* at 1059–62 (citing *Leocal v. Ashcroft*, 543 U.S. 1 (2004); *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010)). In a footnote in *Leocal*, the Supreme Court appeared to address the issue explicitly, albeit without mentioning *Chevron*: "Although here we deal with § 16 in the deportation context, § 16 is a criminal statute, and it has both criminal and noncriminal applications. Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies." 543 U.S. at 11 n.8.

33

In *Esquivel-Quintana*, the Sixth Circuit identified most of the same concerns as Judge Sutton's concurrence.[2]  810 F.3d at 1024 (the majority stated that "left unchecked, deference to agency interpretations of laws with criminal applications threatens a complete undermining of the Constitution's separation of powers.").  However, while agreeing that "this view is increasing in prominence," the majority concluded that the Supreme Court previously declined to apply the rule of lenity to a civil act that contained criminal penalties, and that decision continued to control despite *Leocal*'s footnote.  *Id.* (citing *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 703–04 (1995)); *see Babbitt*, 515 U.S. at 704 n.18.  However, as Judge Sutton explained, reliance on *Babbitt* as controlling this issue was unpersuasive.  *See Esquivel-Quintana*, 810 F.3d at 1030–32 (Sutton, J., concurring and dissenting).[3]

---

[2] The government states that the Supreme Court's reversal of *Esquivel-Quintana* on appeal "impliedly rejected" Petitioner's argument that the rule of lenity applies here to the exclusion of *Chevron* deference.  Resp. Br. at 36 n.14.  That is incorrect.  Instead, the Court expressly declined to reach the issue.  *Esquivel-Quintana*, 137 S. Ct. at 1572.  In so doing, the Court preserved the argument's availability—it did not implicitly reject it.

[3] *Babbitt* concerned a facial challenge to an administrative interpretation of a term in a provision of the Endangered Species Act; and, that provision included both civil and criminal penalties.  515 U.S. 690–91.  Citing *Chevron*, the Supreme Court stated that it "owe[d] some degree of deference to the [agency's] reasonable interpretation."  *Id.* at 703–04.  Then, in a footnote, the Court addressed the rule of lenity:  "We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement."  *Id.* at 704 n.18.  That single sentence in a footnote—carefully referring only to "facial challenges to administrative regulations" that "authorize [] criminal enforcement"—does not preclude the possibility that the rule of lenity trumps *Chevron* in other dual-application contexts.  That is especially so because precedents before and after *Babbitt* tend to support the contrary conclusion.  *See, e.g.*, *Leocal*, 543 U.S. at 11 n.8 (discussed above); *Touby v. United States*, 500 U.S. 160, 165–67 (1991) (discussing how (Continued)

34

In the case at bar, the majority maintains that "the potential criminal consequence of this civil determination based on the interpretation of a civil statute are too attenuated." Maj. Op. at 10. Yet, we need not look at a noncitizen's possible reentry to find the criminal consequences of the INA civil statute. As many justices and sister courts have concluded, and as is the case here, "'deportation as a consequence of a criminal conviction' has a 'close connection to the criminal process,' and is 'uniquely difficult to classify as either a direct or a collateral consequence.'" *Chaidez v. United States*, 568 U.S. 342, 364 (2013) (Sotomayor, J. dissenting with Ginsburg, J, joining) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). Indeed, "[o]ur law has enmeshed criminal convictions and the penalty of deportation for nearly a century, and we had long recognized that deportation is particularly severe." *Id.* (internal quotes omitted).[4]

---

delegating authority to an Executive agency to define crimes would raise a nondelegation doctrine concern); *see also Guedes v. Bureau of ATF*, 140 S. Ct. 2577 (2020) (Gorsuch, J., statement regarding denial of certiorari) (concluding that *Chevron* may never apply to an interpretation of a criminal statute). Indeed, two justices once expressly argued for distinguishing the *Babbitt* footnote on this basis. *Whitman v. United States*, 135 S. Ct. 352, 353–54 (2014) (Scalia, J., statement regarding denial of certiorari, joined by Thomas, J.). "In [*Babbitt*], we deferred, with scarcely any explanation, . . . brush[ing] the rule of lenity aside in a footnote," but "[t]hat statement contradicts the many cases before and since holding that, if a law has both criminal and civil applications, the rule of lenity governs its interpretation in both settings." *Id.* (citing *Leocal*, 543 U.S. at 11 n.8; *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 n.10 (1992)). Likewise, this Court has similarly recognized the interpretive issues posed by dual-application statutes and held that the rule of lenity applies, albeit without addressing the conflict with *Chevron*. *WEC Carolina Energy*, 687 F.3d at 204.

[4] *See Chaidez v. United States*, 568 U.S. 342, 364 n.3 (2013) (citing multiple cases showing that deportation has been treated similarly as a criminal consequence). *See*, *e.g.*, *Jordan v. De George*, 341 U.S. 223, 243 (1951) (Jackson, J., dissenting) (deportation proceedings "practically . . . are [criminal] for they extend the criminal process of (Continued)

35

Despite these reservations and growing acceptance of the contrary view, I agree with the majority that current case precedent counsels us to grant the BIA *Chevron* deference at step zero.

**B.**

At *Chevron* steps one and two, the majority concludes that the statute is ambiguous and that the BIA's interpretation of § 1101(a)(43)(S)'s phrase, "an offense relating to the obstruction of justice," is reasonable.[5] Specifically, the BIA concluded that the phrase does not require a nexus to an *ongoing* proceeding or investigation. According to the BIA, to "obstruct justice" only requires a connection to the "process of justice," which includes circumstances where an investigation or proceeding was merely "reasonably foreseeable." *In re Valenzuela Gallardo*, 27 I. & N. Dec. 449, 460 (B.I.A. 2018) ("*In re Valenzuela Gallardo II*"). I disagree. *See Valenzuela Gallardo II*, 968 F.3d at 1069 (9th Cir. 2020)

---

sentencing to include on the same convictions an additional punishment"); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948) ("[D]eportation is a drastic measure and at times the equivalent of banishment or exile"); *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922) (deportation may result in "loss of both property and life; or of all that makes life worth living"); *Fong Yue Ting v. United States*, 149 U.S. 698, 740 (1893) (Brewer, J., dissenting) ("Everyone knows that to be forcibly taken away from home, and family, and friends, and business, and property, and sent across the ocean to a distant land, is punishment; and that oftentimes most severe and cruel").

[5] The BIA is generally only entitled to deference when interpreting the INA—as opposed to federal criminal statutes, which are beyond its expertise—and this Court extends that rule to "the BIA's precedential interpretation of generic federal crimes listed in the aggravated felony statute." *Amos v. Lynch*, 790 F.3d 512, 518 (4th Cir. 2015). That deference does not extend to BIA interpretations of state statutes, which are beyond its expertise. *Id.* at 518 n.5. That is why the *Chevron* issue in this case concerns only the BIA's construction of the generic offense definition, not its construction of the state offense, which Petitioner also contends was erroneous.

36

(finding that "obstruction of justice" "unambiguously requires a nexus to ongoing or pending proceedings" and vacating removal order from *In re Valenzuela Gallardo II*).

### 1. The Statute is Unambiguous

At the first step, we "examine the statute's plain language; if Congress has spoken clearly on the precise question at issue, the statutory language controls." *Barahona v. Holder*, 691 F.3d 349, 354 (4th Cir. 2012) (internal quotation marks omitted). If Congress has not so spoken, in that "the statute is silent or ambiguous, we defer to the agency's interpretation if it is reasonable." *Id.* (internal quotation marks omitted); *Soliman v. Gonzales*, 419 F.3d 276, 281–82 (4th Cir. 2005); *Mylan Pharm., Inc. v. FDA*, 454 F.3d 270, 274 (4th Cir. 2006) (deferring "purely on statutory construction without according any weight to the agency's position."). The issue here is whether § 1101(a)(43)(S) requires a nexus to an ongoing or pending proceeding or investigation.

#### a. Plain Reading

As noted by the majority, Congress did not define "relating to obstruction of justice" in the INA. Thus, the majority reasons that because § 1101(a)(43)(S) does not explicitly cross reference to the federal code at Chapter 73, which defines the federal "obstruction of justice" offense, then Congress wanted the INA statute to have a broader definition. Maj. Op. at 12. However, the majority sidesteps established canons of statutory interpretation

37

to construct ambiguity which does not exist.[6]  "The short answer is that Congress did not write the statute that way."  *United States v. Naftalin*, 441 U.S. 768, 773 (1979).

The term "obstruction of justice" is a term of art dating back to the 19th century that federal courts have consistently interpreted for over one-hundred years as requiring a specific intent to impede a pending or ongoing proceeding.  *See, e.g.*, *Pettibone v. United States*, 148 U.S. 197, 207 (1893) (holding that obstruction is a criminal act that "can only arise when justice is being administered"); *United States v. Aguilar*, 515 U.S. 593, 599 (1995) (stating, as to a federal obstruction of justice offense, that the conduct "must be [taken] with an intent to influence judicial or grand jury proceedings," which "[s]ome courts have phrased . . . as a 'nexus' requirement."); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005) (holding that a conviction for obstruction of justice requires "requires proof of nexus between corrupt persuasion and particular proceeding.").

As a matter of statutory construction, federal courts "presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts."  *Goodyear Atomic Corporation v. Miller*, 486 U.S. 174, 184–85 (1988); *see also Strawn v. AT&T Mobility*,

---

[6] *See* Richard A. Posner, *Statutory Interpretation-in the Classroom and in the Courtroom*, 50 U. Chi. L. Rev. 800, 817–18 (1983) ("I suggest that the task for the judge called upon to interpret a statute is best described as one of imaginative reconstruction. The judge should try to think his way as best he can into the minds of the enacting legislators and imagine how they would have wanted the statute applied to the case at bar. . . .  The judge who follows this approach will be looking at the usual things that the intelligent literature on statutory construction tells him to look at—such as the language and apparent purpose of the statute, its background and structure, its legislative history (especially the committee reports and the floor statements of the sponsors), and the bearing of related statutes.  But he will also be looking at two slightly less obvious factors.  One is the values and attitudes.").

*LLC*, 530 F.3d 293, 297 (4th Cir. 2008) (recognizing that "in the absence of statutory text reversing the burden of proof, we presume that Congress legislated consistently with existing law."); *United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) (en banc) (explaining that "it is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute.") (referencing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267–68 (1992)). Accordingly, "'absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction.'" *Id.* (quoting *Est. of Wood v. Comm'r*, 909 F.2d 1155, 1160 (8th Cir. 1990).

The same principle applies here. When Congress enacted § 1101(a)(43)(S),[7] we must presume that it did so with the consistent federal definition of "obstruction of justice" established by law since 1946—requiring a nexus to an ongoing and pending proceeding. As detailed below, in 1982, Congress delineated some limited exceptions to capture, *inter alia*, tampering with witnesses. *See* 18 U.S.C. § 1512. However, Congress did not directly overturn the long-established definition of "obstruction of justice" as defined by federal law and the courts. Therefore, § 1101(a)(43)(S)'s use of "obstruction of justice" is cabined by the offenses enumerated by Chapter 73. *Chevron*, 467 U.S. at 843 n. 9.

Additionally, the plain dictionary definition of "obstruction of justice" establishes a nexus requirement to an ongoing or pending proceeding. For example, as noted by the

---

[7] Section 1101(a)(43)(S) defines "aggravated felony" to encompass "*an offense relating to obstruction of justice*, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(S) (emphasis added).

majority, Merriam Webster defines "obstruction of justice" as "*impeding an investigation or legal process*." *Id.* (quoting Merriam-Webster's Dictionary of Law 337 (1996)) (emphasis added); *see also* Maj. Op. at 18. The majority also used Black's dictionary and determined that obstruction of justice was in "reference to *administration of justice or a pending proceeding as well*." *Id.* (citing *Obstructing Justice*, Black's Law Dictionary 1077 (6th ed. 1990) (emphasis added)). The majority also relied on another dictionary to find that obstruction of justice refers to the impairment of "the machinery of the civil or criminal law." *Id.* (citing B. Garner, A Dictionary of Modern Legal Usage 611 (2d ed. 1995)). Yet, the majority reasoned that the "'broad' modifier, 'impair[ing] the machinery of . . . criminal law' could include trying to ensure the police never learn of a crime." *Id.* However, a plain reading of this definition leads to the conclusion that obstruction occurs once the "machinery" learns of the crime, i.e., there are pending proceedings, and someone impairs the machinery. In other words, if the "machinery" never learns of the crime, it cannot be said that its machinery was hindered. On the other hand, if the machinery did learn of the crime *and then* was intentionally hindered from operating, then this would be an impairment. Finally, according to the Oxford English Dictionary, "obstruction of justice" is defined as "the action of preventing or hindering a police officer, etc., in the course of his or her duty. [T]he [U.S.] common-law offence of intentionally preventing or impeding the administration of justice." *Obstruction, Law,* Oxford English Dictionary (3rd ed. 2004). The Oxford English Dictionary suggests that the impediment must occur once an officer is "in the course" of carrying out their legal duty.

40

Still, the majority reasons that Congress' use of the phrase "*relating to* obstruction of justice" adds further ambiguity to the § 1101(a)(43)(S) definition. Maj. Op. at 11, 15–18. However, the phrase "relating to" does not render ambiguous the phrase "obstruction of justice." Indeed, the statutory canons of interpretation guide us to read "relating to" as accommodating the variance in *state* offenses, which have developed differently since common law. *See In re Valenzuela Gallardo II*, 27 I. & N. at 452 n.4 (noting that "there is no discernible pattern in how the States treated the concept of obstruction of justice in their criminal statutes in 1996" and "only 17 states used phrases like 'obstruction of justice' and 'obstructing justice' to define certain crimes").[8] It has long been held that the fact that a statute "has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, at 499 (1985) (internal quotes omitted). Thus, unless the words "relating to" are of no effect, they must be construed to encompass crimes other than those specifically listed in the federal statutes, but which are a categorical match with the nexus requirement. *See Kamagate v. Ashcroft*, 385 F.3d 144, 154 (2d Cir. 2004) (observing that the Supreme Court previously rejected a narrow construction of the phrase and defined "relating to" as follows: "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into

---

[8] The Majority argues that Congress' consideration of state law concedes that the phrase "obstruction of justice" is ambiguous. *See* Maj. Op. at 13. It does not. Rather, it acknowledges variance among the state offenses that relate to "obstruction of justice," just as the federal "obstruction of justice" chapter features several distinct crimes. "'Obstruction of justice' means the offenses listed in Chapter 73, and the modifier 'relating to' works to encompass other crimes that share essential characteristics . . . with those offenses," Reply Br. at 10, meaning, in other words, the state offenses that are a categorical match.

association with or connection with") (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, (1992)).

The BIA previously concluded that the term "relating to obstruction of justice" was not ambiguous because it was cabined by Chapter 73 of Title 18. *See In re Espinoza-Gonzalez*, 22 I. & N. 889, 892-93 (B.I.A. 1999) (en banc) (holding that "obstruction of justice" is a term of art and applying Chapter 73 to define it in the INA context). For example, in *In re Espinoza-Gonzalez*, the BIA considered whether a state's misprision of a felony offense "relates to" obstruction of justice. *Id.* at 896. The BIA explained that, under the phrase "relate to," "the issue [is] whether the specific conviction"—misprision of a felony—"[is] so closely related to the underlying offense"—obstruction of justice—"that it could not be considered separate or distinct from that crime." *Id.* (internal quotations and alterations omitted). As here, the BIA "conclude[d] that it [was] not, precisely because misprision is considered separate and distinct from the crimes categorized as 'obstruction of justice []' . . . because it *lacks the critical element* of an affirmative and intentional attempt, motivated by a *specific intent, to interfere with the process of justice*." *Id.* (emphasis added). The BIA clarified that the phrase "relates to" did not expand the definition of the "underlying offense" of obstruction of justice, so much as it allowed for consideration of state offenses that match as a matter of analogy, as opposed to identicality. *See id.*; *see also Flores v. Att'y Gen. United States*, 856 F.3d 280, 291 (3d Cir. 2017) ("So while the New York statute . . . and [the federal obstruction offense] are not a perfect match in terms of prohibited conduct, . . . [i]t is enough that the

42

two crimes target the same, core criminal conduct such that they are directly analogous.")

(internal quotations omitted).

Since *In re Espinoza-Gonzalez*, sister courts have uniformly agreed with the BIA's previous interpretation requiring a nexus element to an ongoing formal proceeding or investigation. *See, e.g.*, *Valenzuela Gallardo II*, 968 F.3d at 1064 (recognizing that "of the substantive provisions in Chapter 73 that existed when § 1101(a)(43)(S) was enacted, almost all of them required a nexus to an ongoing or pending proceeding or investigation."); *see id.* at 1062 ("We conclude that Congress has clearly answered this question in the affirmative.").[9]

In *Victoria-Faustino v. Sessions*, for example, the Seventh Circuit, like the Ninth Circuit, did not defer to BIA's new interpretation of § 1101(a)(43)(S) because the BIA used the "amorphous phrase 'process of justice—without telling us what that phrase means.'" 865 F.3d 869, 875 (7th Cir. 2017), *as amended* (Oct. 10, 2017). Thus, the Seventh Circuit found that there was no categorical match because an Illinois obstruction of justice statute

---

[9] *See, e.g.*, *Denis v. Att'y Gen. United States*, 633 F.3d 201, 209 (3d Cir. 2011) (holding that the question "does not present an obscure ambiguity or a matter committed to agency discretion" because Chapter 73 "permit[s] us to easily determine the types of conduct Congress intended the phrase to encompass"); *Higgins v. Holder*, 677 F.3d 97 (2d Cir. 2012) (holding that a Connecticut conviction for tampering with witness was an "offense relating to obstruction of justice," because the state conviction required "active interference with proceedings of a tribunal or investigation"); *Cruz v. Sessions*, 689 F. App'x 328, 329 (5th Cir. 2017) (per curiam) (declining to defer to the BIA's 2012 definition of § 1101(a)(43)(S) on the basis that it was "vacated" by *Valenzuela Gallardo I*); *Armenta-Lagunas v. Holder*, 724 F.3d 1019, 1024 (8th Cir. 2013) (holding that the INA statute requires an active interference with proceedings of a tribunal or investigation); *see also Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 813 (9th Cir. 2016) ("*Valenzuela Gallardo I*").

43

did not require interference with the proceedings of a tribunal and, thus, was broad. *Id.* at 876.

Despite this consensus, the BIA later reversed its conclusion from *In re Espinoza-Gonzalez* in the *In re Valenzuela Gallardo I* and *II* cases. *See In re Valenzuela Gallardo*, 25 I. & N. Dec. 838 at 841 (B.I.A. 2012) ("*In re Valenzuela Gallardo I*") (holding that "while many crimes fitting this definition [of obstruction of justice] will involve interference with an ongoing criminal investigation or trial, we now clarify that the existence of such proceedings is not an essential element."); *In re Valenzuela Gallardo II*, 27 I. & N. Dec. 449 at 452–56 (same); *but see Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 813 (9th Cir. 2016) ("*Valenzuela Gallardo I*") (rejecting the BIA's new interpretation in *In re Valenzuela Gallardo I* on constitutional avoidance grounds because it raised a vagueness issue). Accordingly, the BIA stated that only a "reasonably foreseeable" investigation or proceeding is required. *In re Valenzuela Gallardo I*, 25 I. & N. at 842; *In re Valenzuela Gallardo II*, 27 I. & N. at 460. For the reasons mentioned above, the BIA's interpretation was incorrect.

b.   Statutory Framework

Second, the statutory framework provides further clarity. *See King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) ("the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context") (internal quotation marks omitted). We must "read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (internal quotation marks omitted). The harmonious-reading canon also provides that a court should "interpret [a] statute as a symmetrical and coherent regulatory

44

scheme, and fit, if possible, all parts into a harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

The majority primarily relies on 18 U.S.C. §§ 1510, 1512, and 1519 to find ambiguity at *Chevron* step one and to find that the BIA's interpretation is reasonable at step two. However, based on Supreme Court and Fourth Circuit precedent these sections and others like them are not sources of ambiguity and the BIA's reliance on them to expand the meaning of "obstruction of justice" is incorrect.

### i. 18 U.S.C. § 1512

As noted by the majority, the BIA was partially correct: one section of the obstruction of justice chapter applies outside of formal proceedings. The Victim and Witness Protection Act, 18 U.S.C. § 1512, penalizes witness intimidation and whoever kills, uses physical force, or threat of physical force against a person with the intent to prevent their attendance or delay in "an official proceeding." Section 1512 also states that "an official proceeding need not be pending" at the time of the offense. Accordingly, the BIA and the majority rely on § 1512 to broaden the meaning of obstruction of justice and hold that it does not require a nexus element to an "ongoing proceeding." Maj. Op. at 1. Thus, a proceeding only needs to be reasonably foreseeable. The majority takes it a step further by holding that "obstruction of justice can include crimes *before* an investigation has even begun." Maj. Op. at 14 (emphasis added).

However, in interpreting § 1512, the Supreme Court has found that while obstruction of justice can include non-pending but reasonably foreseeable official proceedings, these proceedings must be *more* than mere fear of investigation and the

45

obstruction *must* be connected to existing proceedings.  *See Aguilar*, 515 U.S. at 599 (1995) (holding that to convict a defendant under § 1512(c) "it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the courts or grand jury's authority."); *Arthur Andersen LLP*, 544 U.S. at 707–08 (2005) (in interpreting § 1512(e)(1), Justice Rehnquist clarified that "it is [] one thing to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,' and quite another to say a proceeding need not even be foreseen.  A 'knowingly . . . corrup[t] persuade[r]' cannot be someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material.") (internal citation omitted).

Based on our own precedent, "§ 1512 *does* require that (1) the obstructive conduct be connected to a specific official proceeding (the "nexus" requirement) that was (2) either pending or was reasonably foreseeable [] when [] engaged in the conduct."  *United States v. Young*, 916 F.3d 368, 385 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 113 (2019).  The Fourth Circuit further clarified that an "official proceeding," as defined by 18 U.S.C. § 1515(a)(1), "include[s], *inter alia*, 'a Federal grand jury' or 'a proceeding before a Federal Government agency which is authorized by law.'"  *United States v. Sutherland*, 921 F.3d 421, 425–26 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 1106, 206 L. Ed. 2d 179 (2020).  Thus, "FBI investigations, for example, are not official proceedings because . . . § 1515(a)(1)(C) [] 'implies some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the

46

agency.'" *Id*. (quoting *Young*, 916 F.3d at 384) (internal quotes omitted).[10] Accordingly, an "official proceeding" is something more formal than a mere investigation. *See Sutherland* at 426 ("Providing materially false documents with an intent only to influence the U.S. Attorney's investigation, therefore, would not amount to a violation of § 1512(c)(2)."). Certainly, then, obstruction cannot occur *before* an investigation begins.

Moreover, the statutory history shows that Congress explicitly drafted § 1512 to "protect [] against the rare type of conduct that is the product of the inventive criminal mind, and which also thwarts justice." S. REP. 97-532, 18, 1982 U.S.C.C.A.N. 2515, 2524. As noted by Congress, it was trying to address the issue of "retaliation against friends, relatives, or associates of an individual who [] provided information concerning criminal investigations." S. REP. 97-532, 20, 1982 U.S.C.C.A.N. 2515, 2526.

The BIA knew of this legislative history when it interpreted the provision in 1999 in *In re Espinoza-Gonzalez*, 22 I. & N. 889 (en banc). Indeed, the BIA's own analysis at the time recognized that Congress was aware that "obstruction of justice" required a nexus element to a pending proceeding and, thus, intended to delineate a specific exception. Here, the exception does not define the statute. That is, "obstruction of justice" is defined by its plain meaning and not by § 1512, which was meant to deal with rare circumstances. As the Ninth Circuit explained, "Congress's explicit instruction that § 1512 reach proceedings that are not pending . . . only underscores that the common understanding at the time

---

[10] The Fourth Circuit agreed that an FBI and Border Patrol Investigation was not an official proceeding. *Id.* (referencing *United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013) (FBI investigation)); *United States v. Ramos*, 537 F.3d 439, 460–64 (5th Cir. 2008) (Border Patrol investigation)).

§ 1101(a)(43)(S) was enacted into law was that an obstruction offense referred only to offenses committed while proceedings were ongoing or pending." *Id.*

Congress has added other sections to Chapter 73, consistent with existing law, requiring a nexus to a pending or ongoing proceeding. *See, e.g.*, § 1507 (prohibiting, *inter alia*, picketing a court or a "residence occupied by such judge, juror, witness or court officer" "with the intent of interfering with, obstructing, or impeding the administration of justice"); § 1509 (obstruction of court orders); § 1510(a) (criminalizing attempt to stop someone from going to the police); § 1513 (prohibiting retaliation against a witness, and contemplating that a proceeding or investigation is either ongoing or has already been completed); *see also Palisades Collections LLC v. Shorts*, 552 F.3d 327, 335 (4th Cir. 2008) ("[W]e presume that Congress legislated consistently with existing law and with the knowledge of the interpretation that courts have given to the existing statute."). The BIA itself has recognized Congress' nexus requirement. *See In re Espinoza-Gonzalez*, 22 I. & N. Dec 889, at 892 (1999) ("The obstruction of justice offenses listed in 18 U.S.C. §§ 1501–1518 have as an element interference with the proceedings of a tribunal or require an intent to harm or retaliate against others who cooperate in the process of justice or might otherwise so cooperate.").

Both the BIA and the majority also point to 18 U.S.C. § 1519, which postdates the passage of § 1101(a)(43)(S), as evidence that "some obstruction-of-justice offenses laid out in Chapter 73 can occur even before an investigation." Maj. Op. at 14; *see also In re Valenzuela Gallardo II*, 27 I. & N. Dec. at 453 (B.I.A. 2018). However, the majority and the BIA again sidestep the relevant statutory history and purpose of § 1519 to find

48

ambiguity where there is none and to impermissibly broaden the reach of the INA statute. Congress meant § 1519 to "apply broadly to any acts to destroy or fabricate physical evidence so long as they are done *with the intent* to obstruct, impeded, or influence the investigation or proper administration of any matter."  S. REP. 107-146, 14, at 14–15 (2002), 2002 WL 863249, at *12–13.  In doing so, Congress was solving a particular problem that arose from the Enron corporate fraud scandal.  Specifically, after Enron announced a $618 million net loss, and immediately after the Securities and Exchange Commission ("SEC") began investigating, partners launched an intentional campaign to shred "tons" of documents to thwart the SEC investigation and other potential civil actions. S. REP. 107-146, 4.  In the wake of this debacle, Congress crafted § 1519 to provide "prosecutors with all the tools they need to ensure that individuals who destroy evidence with the intent to impede a pending or future criminal investigation are punished."  S. REP. 107-146, 27.[11]  Notably, Congress stated though "Section 1519 overlaps with a number of existing obstruction of justice statutes, [] we also believe it captures a small category of criminal acts which are not currently covered under existing laws. . . ." *Id.*  Thus, Congress intended for § 1519 to be narrowly used to:

> prosecute only those individuals who destroy evidence with the specific intent to impede or obstruct a pending or future criminal investigation, a formal administrative proceeding, or bankruptcy case.  It should not cover the destruction of documents in the ordinary course of business, *even where*

---

[11] Congress clarified that its goal was to "provide for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations, to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy, to protect whistleblowers who report fraud against retaliation by their employers, and for other purposes."  S. REP. 107-146, 2.

*the individual may have reason to believe that the documents may tangentially relate to some future matter within the conceivable jurisdiction of an arm of the federal bureaucracy.*

S. REP. 107-146, 27 (emphasis added).

As noted by our sister circuit, "though [the BIA's new interpretation] ostensibly defines the required mens rea—intent to interfere with the 'process of justice'—it provides little instruction on the equally important actus reus. *Valenzuela Gallardo I*, 818 F.3d at 821. That is, the BIA's new interpretation, which the majority accepts as reasonable, goes further than Congress intended because it punishes any act that could seemingly interfere with a not yet-existing investigation so long as it *could* "tangentially relate to" the "process of justice." This goes far beyond the purpose of § 1519. Thus, even if the BIA's new interpretation includes the mens rea element, ". . . there is no indication of what it is that must be interfered with in order to 'obstruct justice.'" *Id.* at 822. Accordingly, even if § 1519 renders the INA statute ambiguous, which I believe it does not, the BIA's new interpretation, as detailed further below, is still unreasonable and vague.

### ii.  18 U.S.C. § 1503

The BIA also relies on 18 U.S.C. § 1503, the "catchall provision," which criminalizes any conduct that interferes with the "administration of justice," as a source of ambiguity. *See In re Valenzuela Gallardo I*, 25 I. & N. at 842 (B.I.A. 2012); In re *Valenzuela Gallardo II*, 27 I. & N. at 460. While the BIA in *In re Valenzuela Gallardo II* pointed to this provision as undermining a formal nexus requirement, the Supreme Court rejected that reading of the phrase over a hundred years ago, and again in 1995, and courts have continued to reject it since. *See Pettibone*, 148 U.S. at 203–04 (1893) ("The

50

obstruction of the due administration of justice in any court of the United States . . . is indeed made criminal, but such *obstruction can only arise when justice is being administered."); Aguilar*, 515 U.S. at 600 (1995) ("Although respondent urges various broader grounds for affirmance, we find it unnecessary to address them because we think the 'nexus' requirement developed in the decisions of the Courts of Appeals is a correct construction of § 1503.").[12]

Similarly, the Fourth Circuit has consistently held that to prove a violation of § 1503, the government must establish that the defendant obstructed a "pending proceeding." *United States v. Seriani*, 129 F.3d 118 (4th Cir. 1997) (quoting *United States v. Grubb*, 11 F.3d 426, 437 (4th Cir. 1993)). "To be guilty of obstructing justice under § 1503, a defendant must have *knowledge or notice of a pending judicial proceeding*, and must have acted with the intent to influence, obstruct, or impede that proceeding in its due

---

[12] *See, e.g., United States v. Brown, 688 F.2d 596, 598 (9th Cir. 1982) ("No case interpreting [§ 1503] has extended it to conduct which was not aimed at interfering with a pending judicial proceeding.") (referencing United States v. Shoup*, 608 F.2d 950, 961 (3d Cir. 1979); *United States v. Simmons*, 591 F.2d 206, 208 (3d Cir. 1979)); *United States v. Smith*, 729 F. Supp. 1380, 1383 (D.D.C. 1990) (The most critical limitation on *[§ 1503]* for purposes of defendant's present motion, however, is that the conduct relate to a "pending judicial proceeding."); *United States v. Capo*, 791 F.2d 1054, 1070 (2d Cir. 1986) ("To obtain a conviction under this section, the government must show that there was a pending judicial proceeding, such as a grand jury proceeding, . . . and the defendant knew of and sought to influence, impede, or obstruct the judicial proceeding. . . .") (citations omitted), *reh'g granted on other grounds*, 817 F.2d 947 (2d Cir. 1987) (*en banc*); *United States v. Davis*, 183 F.3d 231, 239 (3d Cir.), *amended*, 197 F.3d 662 (3d Cir. 1999) ("[t]o violate § 1503, a defendant must have notice or knowledge of the pendency of some judicial proceeding constituting the administration of justice.") (internal quotes omitted); *United States v. Vesich*, 724 F.2d 451, 454 (5th Cir. 1984) ("A prerequisite to any violation of section 1503 is the existence of a pending judicial proceeding known to the violator."); *United States v. Risken*, 788 F.2d 1361, 1368 (8th Cir.) (same), *cert. denied*, 479 U.S. 923, 107 S.Ct. 329, 93 L.Ed.2d 302 (1986).

administration of justice." *United States v. Littleton*, 76 F.3d 614, 619 (4th Cir. 1996); *United States v. Brooks*, 111 F.3d 365, 372 (4th Cir. 1997) (explaining that "a defendant may be found culpable where the reasonable and foreseeable consequences of his acts are the obstruction of justice" related to the pending proceeding); *United States v. Edlind*, 887 F.3d 166, 176 (4th Cir. 2018) (finding obstruction of justice because there was "no dispute" that there was a "pending judicial proceeding" that the defendant knew about and that he acted with intent to disrupt these proceedings).

> ### iii.    18 U.S.C. § 3

Finally, both the BIA and majority incorrectly point to 18 U.S.C. § 3 as an example of Congress expanding the scope of "obstruction of justice" to include crimes enumerated outside Chapter 73. *See* Maj. Op. at 16. However, Congress clearly spoke by placing § 3 outside of Chapter 73 and, thus, instructed courts that it was different from "obstruction of justice." *See Flores*, 856 F.3d at 289 & n.38 (explaining that where Congress chose to codify § 3 is particularly relevant "because Title 18 was enacted as positive law and accordingly approved by Congress."). Still, the majority points to *United States v. White*, 771 F.3d 225 (4th Cir. 2014) to argue that this Court has found that § 3 qualifies as an obstruction of justice offense. However, in *White*, the Fourth Circuit addressed, *inter alia*, whether the Government provided sufficient evidence to sustain a conviction for accessory after the fact to arson and whether the district court erred in denying the defendant's Rule 29 motion. *Id.* at 232. In *White*, the government argued that the defendant violated § 3 "when he knowingly made a false and misleading statement to an insurance representative for the purpose of helping" his co-defendant and himself "avoid apprehension." *Id.* at 233.

52

The Fourth Circuit never addressed the question of whether § 3 qualified as "obstruction of justice" or whether§ 3 expanded Chapter 73's definition to include offenses related to evading capture, punishment, or detection *before* an investigation.

\*      \*      \*

Although the BIA may re-interpret § 1101(a)(43)(S), it must do so reasonably and correctly.  Here, the BIA's *In re Valenzuela Gallardo II* decision was wrongly decided. The Ninth Circuit rejected the BIA's interpretation on appeal in both cases, instead affirming the BIA's prior interpretation in *In re Espinoza-Gonzalez*.  *See Valenzuela Gallardo I*, 818 F.3d at 813 (9th Cir. 2016); *Valenzuela Gallardo II*, 968 F.3d at 1062–68 ("[T]he BIA's proffered reasonably foreseeable standard cannot stand . . . . [W]hen Congress enacted § 1101(a)(43)(S) into law, an offense relating to obstruction of justice unambiguously required a nexus to an ongoing or pending proceeding or investigation."). Critically, no other court has deferred to the BIA's new interpretation, instead deferring to the Ninth Circuit's decisions.  *See, e.g.*, *Victoria-Faustino v. Sessions*, 865 F.3d 869, 876 (7th Cir. 2017); *Cruz v. Sessions*, 689 F. App'x 328, 329 (5th Cir. 2017).

Because Congress spoke and federal courts have consistently interpreted "obstruction of justice" as requiring a nexus requirement to a pending or ongoing proceeding, it is not ambiguous under *Chevron*'s first step.  *See Ramirez*, 887 F.3d 701 (explaining that *Chevron* deference only applies when Congress has not directly answered the question); *see also Ojo v. Lynch*, 813 F.3d 533, 541 (4th Cir. 2016) (declining to apply *Chevron* deference where the "plain meaning" of a "simple phrase," used elsewhere in the federal code, precluded the BIA's finding of ambiguity and application of a different

53

definition for that phrase in the immigration context).[13]  Accordingly, I disagree with the majority's deference to the BIA's new interpretation.

### 2.  The BIA's Definition is Unreasonable

However, even if § 1101(a)(43)(S) is regarded as ambiguous at *Chevron* step one, the outcome is the same at *Chevron*'s second step.  The BIA's conclusion that a formal nexus is not required by Chapter 73—based solely on the express exception in § 1512 and the catchall provision that it wrongly interpreted—is unreasonable.

As noted above, the majority's holding is out of step with sister circuits and, thus, stands alone in finding the BIA's interpretation as reasonable.  For example, the Fifth Circuit regarded the term as ambiguous, given that § 1101(a)(43)(S) does not include a definitional cross-reference to the U.S. Code.  *Alwan v. Ashcroft*, 388 F.3d 507, 514 (5th Cir. 2004).  Nevertheless, at the second step, *Alwan* agreed with *In re Espinoza-Gonzalez*'s application of Chapter 73 to define the phrase and found a formal nexus requirement.  *Id.* ("Title 18 of the United States Code, however, provides a listing of crimes that are collectively labeled, 'obstruction of justice.'") (citing *In re Espinoza-Gonzalez*, 22 I. & N.

---

[13] The government states that "the majority of courts that have clearly addressed the issue" have concluded that "§ 1101(a)(43)(S) is ambiguous." Resp. Br. at 14.  It is arguable whether this position is really a majority one; but, regardless, the government declines to mention that the cases it pointed to still endorsed the *In re Espinoza-Gonzalez* definition, the same position Petitioner argues for here.  *See, e.g.*, *Victoria-Faustino v. Sessions*, 865 F.3d 869, 876 (7th Cir. 2017) ("[W]e will not defer to the *In re Valenzuela Gallardo* articulation of what constitutes a crime relating to the obstruction of justice under the INA. This leaves us with the definition as articulated in *In re Espinoza-Gonzalez*."); *Alwan v. Ashcroft*, 388 F.3d 507, 514 (5th Cir. 2004) (same).  No court has deferred to the BIA's reversed definition from the *Valenzuela Gallardo* cases.

at 889); *id.* (concluding that the § 1503 "catchall" provision includes a "nexus requirement").

Similarly, the Ninth Circuit found that the BIA's interpretation was unconstitutionally vague because "though the BIA has said that not every crime that tends to obstruct justice qualifies as an obstruction of justice crime, and the critical factor is the interference with the process of justice—which does not require an ongoing investigation or proceeding—the BIA has not given an indication of what it does include in "the process of justice," or where that process begins and ends." *Valenzuela Gallardo I*, 818 F.3d at 819 (9th Cir. 2016).

Here, the BIA stated to "obstruct justice" only requires a connection to the "process of justice," which includes circumstances where an investigation or proceeding was merely "reasonably foreseeable." *In re Valenzuela Gallardo*, 27 I. & N. at 460 (BIA 2018). However, what does it mean for a proceeding or investigation to be "reasonably foreseeable"? Does foreseeability depend on where someone lives or their likelihood of interacting with police or the criminal legal system? Simply stated, if the "machinery of criminal law" historically focuses primarily on certain people, areas, or crimes, then an investigation might *always* be reasonably foreseeable and, thus, following the majority's reasoning, any act (even an innocent one) could be seen as "obstructing" or impeding the "process of justice." For example, if a person who witnessed a crime decides to remain silent from questioning by police because they know the alleged suspect, would this silence be sufficient to "obstruct justice" under the BIA's new definition? Indeed, the majority and the BIA do not define what "process of justice" means—a phrase that the BIA itself

55

created. Though "process" may be used to limit "justice," the latter is an ideal, and the former does not instruct what specific actions are required to obstruct justice. Even the exceptions that the majority point to, §§ 1512 and 1519, show that Congress instructed specifically what acts, like destroying evidence, are required to obstruct justice.

The BIA and majority reason that the key factor is that the interference must be somewhere in the "process of justice," which extends *before* the investigation begins. Though the majority agrees with broadening the scope of "obstruction of justice," it did not address this issue of vagueness or provide any limiting principle to the BIA's broad reach. As the Ninth Circuit cautioned, "the BIA has not given an indication of what it does include in 'the process of justice,' or where that process begins and ends." *Valenzuela Gallardo I*, 818 F.3d at 819. Thus, the BIA's interpretation is not only unreasonable for the reasons mentioned above, but also raises the issue of being unconstitutionally vague. *See United States v. Williams*, 553 U.S. 285, 306 (2008) (explaining that amorphous terms "without statutory definitions, narrowing context, or settled legal meanings" raise vagueness concerns.)

Ultimately, there are multiple grounds for reaching the same conclusion, be it *Chevron* step zero, one, or two: the government's core argument—that this Court must grant *Chevron* deference to the BIA's reliance on the *In re Valenzuela Gallardo I* and *II* cases—fails.

56

## II.

The majority concluded that the BIA's definition of obstruction of justice is a categorical match with the elements of Petitioner's crime of conviction—accessory after the fact under Virginia law. I disagree because the nexus element in the Virginia statute is broader, and it is unclear whether the Virginia statute requires a specific intent element.

First, the Virginia requirement that a defendant act with the intent of helping that person escape or delay capture, prosecution, or punishment is broader than the "specific intent to interfere" with a pending or ongoing proceeding in the INA. The Virginia statute could reach instances where the offender knowingly assists the principal prior to discovery of the crime. *See, e.g.*, *Valenzuela Gallardo II*, 968 F.3d at 1069 (finding overbreadth in California's accessory offense because "a defendant can be found guilty for helping a principal to a felony escape . . . regardless of whether a proceeding or investigation has in fact been initiated"); *Flores*, 856 F.3d at 292–95 (holding that South Carolina accessory "is *not* 'related to obstruction of justice'" because "there are infinite actions a defendant may undertake with the intent to aid the principal after the commission of a crime, but before the commencement of judicial proceedings, none of which would constitute a [generic] violation").

Second, while the majority found that the Virginia statute requires a specific intent to help a known felon escape capture or punishment, I find that it is not clear that it does.

As an initial matter, I recognize that the Virginia Pattern Jury Instructions require the Commonwealth to "prove beyond a reasonable doubt each of the following elements of that crime," including "[t]hat the defendant comforted, relieved, hid, or in any other way

57

assisted the person who committed the (name of crime) *with the intent of helping that person escape or delay capture, prosecution or punishment*." 1 Va. Model Crim. Jury Instr. No. 3.300, Accessory After the Fact (emphasis added). However, Virginia Supreme Court law has not adopted this specific intent requirement.

The BIA avoided this issue by citing a different definition of the third element of the Virginia offense. In *Commonwealth v. Dalton*, the Virginia Supreme Court stated only that "the accused must receive, relieve, comfort, or assist the felon." 524 S.E.2d 860, at 862 (Va. 2000). However, BIA—citing a Virginia Court of Appeals case, *Suter v. Commonwealth*, 796 S.E.2d 416 (Ct. App. Va. 2017)—provided instead: "the aid must have been given to the felon personally *for the purpose of* hindering the felon's apprehension, conviction, or punishment." A.R. 3 (emphasis added). After this quote from *Suter*, the BIA included a "see also" citation to *Dalton* with no further explanation. *See id.* The BIA then concluded: "Although a 'specific intent' is not required by statute," the requirement "to hinder a felon's apprehension, conviction or punishment necessarily requires a specific intent." A.R. 4. And the Petitioner "ha[d] not presented evidence that Virginia applied the statute to him or to other defendants under the respondent's construction, i.e., without specific intent." *Id.*

The BIA's construction of the state offense was in error. *Dalton* is the most recent Supreme Court of Virginia accessory decision and never discusses the defendant's "purpose" in providing assistance. 524 S.E.2d at 862–63. It expressly listed the "three elements to the crime of being an accessory after the fact," without referencing any "purpose" requirement. *See id.* The only other contemporary State Supreme Court

58

decision regarding the crime, *Manley v. Commonwealth*, listed the exact same three elements. 283 S.E.2d 207, 208 (1981). Indeed, *Manley* quoted the elements from a 19th century Virginia case, *Wren v. Commonwealth*, noting that "[t]he definition of an accessory after the fact is one of ancient origin." *Id.* (citing *Wren v. Commonwealth*, 26 Gratt. 952, 956, 67 Va. 952, 956 (1875)). Authority from the state's highest court controls this Court's application of the categorical approach. *See United States v. Aparicio-Soria*, 740 F.3d 152, 154 (4th Cir. 2014) (en banc) ("To the extent that the statutory definition of the prior offense has been interpreted by the state's highest court, that interpretation constrains our analysis of the elements of state law.").

In response, the majority points to language in that 1875 case, *Wren*, and another from 1914, *Buck v. Commonwealth*. Both of those cases refer to an 1850s-era criminal law treatise: "The true test (says Bishop, § 634) whether one is accessory after the fact, is to consider whether what he did was done by way of personal help to his principal, *with the view of enabling his principal to elude punishment*; the kind of help rendered appearing to be unimportant." *Wren*, 67 Va. at 957 (emphasis added); *Buck v. Commonwealth*, 83 S.E. 390, 393 (1914). The majority reasons that the language "with the view of enabling" amounts to a specific intent requirement. But both *Wren* and *Buck* turned on whether the evidence showed that the defendant had actually "assisted" the principal. *Wren*, 67 Va. at 957–62; *Buck*, 83 S.E. at 390–93.[14] And, both cases concerned only one type of assistance:

---

[14] In *Wren*, the defendant was a detective who purposefully neglected his duty to arrest a suspected thief. 67 Va. At 958–62. The court explained that the defendant may have committed some other crime, like "misprision of a felony," but he did not commit (Continued)

59

escaping punishment. Therefore, the "test" from the Bishop treatise was used in *Wren* and *Buck* to determine whether one specific type of "assistance" occurred as a matter of fact—not as a distinct element requiring specific intent. In other words, the "test" referred to in these cases—which is the only authority supporting the BIA's construction—goes to the actus reus of the offense, as opposed to being a separate intent element. As mentioned above, *Wren* expressly identified the same three "elements" of the offense that *Dalton* referred to 125 years later. *Wren*, 67 Va. at 956; *Dalton*, 524 S.E.2d at 862. The court only referred to "the view" with which the defendant acted when applying the law to the facts at hand. *See Wren*, 67 Va. at 957–62. Even if Virginia accessory required that the defendant acted "with the view" of helping the principal "elude punishment," that intent requirement would still be broader than that of the generic offense. An individual could act with the purpose of helping the principal elude punishment without acting with the specific intent to interfere with an investigation or proceeding—for example, if the defendant acted with the understanding that their assistance would prevent anyone from discovering the felony was committed in the first place.

Nor does the intermediate case the BIA relied on, *Suter*, support its construction of the statute. Like *Wren* and *Buck*, *Suter* quotes a treatise for the proposition that "the aid must have been given to the felon personally *for the purpose of* hindering the felon's

---

accessory because he took no affirmative act assisting the principal with avoiding punishment. *Id.* In *Buck*, the defendant was merely present while others helped the principal escape. 83 S.E. at 390–93. The court vacated the accessory conviction because the evidence did not show the defendant "did anything whatever . . . with the view to enabl[e] [the principal] to elude punishment." *Id.* at 393.

60

apprehension." *Suter*, 796 S.E.2d at 420 (citing Wayne R. LaFave, *Criminal Law* § 13.6, at 753–54 (5th ed. 2010)) (emphasis added). But, immediately afterwards, *Suter* quotes the same three elements from *Dalton* as "[a] summary of the common-law definition of accessory after the fact to a felony." *Id.* This hardly supports the BIA's reliance on *Suter* to support that "purpose" is an *element* of the offense, when *Suter* then quoted the Virginia Supreme Court's list of elements, featuring no such requirement.[15] As noted above, authority from a state's highest court controls, and the two most recent Virginia Supreme Court decisions never consider whether the defendant acted with a particular purpose. *See Aparicio-Soria*, 740 F.3d at 154.

Finally, while the BIA noted that Petitioner "ha[d] not presented evidence that Virginia applied the statute . . . without specific intent," such evidence does exist.[16] Petitioner identified two Virginia Court of Appeals cases discussing prosecutions of accessory offenses absent evidence of specific intent or an ongoing proceeding or investigation. Opening Br. at 32–33.

---

[15] Moreover, *Suter* turned on a different element: whether a felony had, in fact, been completed. *See id.* The defendant's mindset was irrelevant to the determination and, therefore, the quote from the treatise referring to "purpose" arguably amounts to non-binding dicta. *See id.*

[16] In the Fourth Circuit, a petitioner is not required to present such evidence to prove overbreadth, though it is often persuasive. *See Gordon*, 965 F.3d at 259–61 (holding, where a petitioner established statute was overbroad based on plain language, statutory scheme, and state court opinions, he was not "require[d] . . . to 'find a case' in which the state successfully prosecuted a defendant for the overbroad conduct"); *see also id.* at 260 n.8 (rejecting government's argument that the Fourth Circuit mandates application of the "reasonable possibility" test).

First, in *Powell v. Commonwealth*, the defendant was convicted of accessory to grand larceny for exchanging a $100 bill with a co-worker whom the defendant knew was stealing from their employer. 521 S.E.2d 787, 788–89 (Va. Ct. App. 1999) (explaining that the defendant understood that larger bills facilitated the scheme). The court of appeals reversed because the evidence was insufficient to prove that the principal completed the grand larceny felony. *Id.* at 789–90. However, the court held that the mens rea element was satisfied because "[the defendant] knew that [the principal] was stealing money from [the employer]." *Id.* at 789. In other words, the court construed the offense as requiring only knowledge, which is broader than the specific intent to obstruct. *See id.*; *see also Valdivia-Flores*, 876 F.3d 1201, 1207 (finding no categorical match with federal specific intent element because the state offense "requires merely knowledge").

Second, in *Johnson v. Commonwealth*, the defendant helped the principal load and unload stolen goods acquired from burglarizing a home. No. 1216-01-1, 2002 WL 533689, at *1–2 (Va. Ct. App. Apr. 9, 2002). The appeals court affirmed the defendant's conviction for accessory to burglary because the evidence "established beyond a reasonable doubt that defendant assisted [the principal] following the burglary, with knowledge of the offense and [the principal's] involvement in it." *Id.* Thus, as in *Powell*, the court resolved the case based on evidence of knowledge, not the defendant's purpose in assisting. *See id.* Moreover, the BIA referred to the specific intent required as acting "for the purpose of hindering the felon's apprehension, conviction, or punishment," but in *Johnson*, the assistance provided had little to do with eluding detection or punishment, and the court never considered the purpose of the defendant's actions. *See id.* Rather, the defendant was

62

guilty because he "assisted" with "loading and secreting much of [the stolen] property," which constituted receiving, relieving, comforting, or assisting a known felon. *See id.* (citing *Manley*, 283 S.E.2d at 208). Thus, *Johnson* and *Powell* establish that Virginia does prosecute conduct broader than the federal generic offense, and the BIA's contrary reading of the case law erroneously extrapolated from dicta or from discussion of the actus reus. Indeed, both cases quote the same list of three elements provided above from *Dalton* and *Manley*, without mention of any specific intent or purpose requirement. *See id.*; *Powell*, 521 S.E.2d at 788–90.

In sum, there are several indications that the Virginia statute is broader than the federal definition: it does not require an ongoing investigation or proceeding; authority from the state's highest court refers only to a "knowledge" requirement, not specific intent; and Virginia has prosecuted conduct under the offense that proves those two differences. Therefore, the BIA erred in concluding that Petitioner's state conviction is an "aggravated felony." Because the majority disagrees, I respectfully dissent.